1999 ME 2

**TOWN OF STONINGTON et al.**

v.

**GALILEAN GOSPEL TEMPLE et al.**

Supreme Judicial Court of Maine.

Argued Nov. 2, 1998.
Decided Jan. 6, 1999.

Edmond J. Bearor, (orally), Rudman & Winchell, LLC, Bangor, for appellants.

Christopher James Whalley, (orally), Ellsworth, for cross-appellants Manford & Helen Eaton.

Mary N. Kellett, (orally), Law Offices of Ellen S. Best, Blue Hill, for appellee Town of Stonington.

Before WATHEN, C.J., and CLIFFORD, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Francis A. Cormier and the Galilean Gospel Temple (Temple) appeal from the judgments entered in the Superior Court (Hancock County, *Marsano, J.*) following a bench trial. By separate judgments in this consolidated action, the court awarded $5,000 to the Town of Stonington (Town) for violations of its Noise Control Ordinance and $5,000 to Manford and Helen Eaton for damages caused by negligent infliction of emotional distress (NIED). The Eatons cross-appealed, contending, inter alia, that the court erred in concluding that their claim for nuisance was not properly before the court. We affirm the judgment for the Town. We vacate the judgment as to Cormier and the

Temple because the Eatons' complaint gave adequate notice of their claim that the operation of the quarry created a nuisance.

[¶ 2] The Temple is a non-profit corporation that owns land in Stonington. Cormier, the founding pastor of the Temple, receives a small stipend for his pastoral services, but earns his living primarily as a building contractor. The Eatons own land adjoining the Temple's property. In 1978, when the Eatons purchased their property, a non-functioning quarry existed on the Temple's property. In 1986, Cormier began operating the quarry, paying the Temple a "stumpage fee" for each cubic foot of stone that he removed. The stone is removed by the use of a "stone burner": a device that cuts a vertical channel into the granite.

[¶ 3] In 1994, due to complaints about the noise made by the "stone burner" and other quarry operations, the Town passed the Noise Control Ordinance (Ordinance). The Ordinance prohibits "Daytime" noise that exceeds 65 decibels "at the lot line of the receiving property."

[¶ 4] Following continued citizen complaints the Town filed a land use citation and complaint against Cormier and the Temple on June 7, 1996, seeking monetary and injunctive relief. The complaint stated, "while it is believed that the violation is an ongoing one, three specific violations have been measured": May 16, June 3 and June 4, 1996.

[¶ 5] The District Court (Ellsworth, *Romei, J.*) issued a temporary restraining order (TRO) against Cormier and the Temple on June 7, which the District Court (Ellsworth, *Anderson, J.*) then dissolved on June 13. On June 20, the District Court (Ellsworth, *Staples, J.*) granted the Town's request for a preliminary injunction, enjoining the defendants from operating the quarry in violation of the Ordinance. In addition, the court stated that the Town could seek an order of contempt if the defendants continued to violate the Ordinance.

[¶ 6] On July 12, after measuring noise levels in violation of the Ordinance on more than three occasions, the Town filed a contempt complaint. On July 17, the Superior Court (Hancock County, *MacInnes, A.R.J.*) conducted a contempt hearing, but continued the proceedings until after August 8, when a hearing was scheduled on the defendants' motion to set aside the preliminary injunction. At the end of the August 8 hearing, the Superior Court (Hancock County, *Marsano, J.*) noted that the defendants were not complying with the June 20 preliminary injunction order and reissued the order "until [the] matter is finally heard and reviewed." On February 7, 1997, the Town amended its contempt complaint to include alleged violations on eight more occasions: August 19, September 13, September 20, September 23 on two occasions, December 6 and December 10, 1996; and January 13, 1997.

[¶ 7] Meanwhile, the Eatons filed a complaint against the Temple and Cormier on January 24, 1996, requesting monetary and injunctive relief. The Eatons alleged that the defendants' operation of the quarry had deprived the Eatons of the safe and quiet enjoyment of their home and that the defendants' negligence caused the Eatons to suffer serious emotional distress. On the same day, the Eatons requested a TRO.

[¶ 8] On January 31, 1996, the Superior Court (Hancock County, *Mead, J.*) denied the Eatons' motion for a TRO. On May 22, the Eatons renewed the motion, alleging that since the January 31 order the defendants had "engaged in a pattern of burning and quarrying activities of far greater intensity and regularity than ever engaged in before." The Superior Court (Hancock County, *Mead, J.*) again denied the motion, stating that "this issue cannot be adequately explored in absence of a testimonial hearing." The Superior Court (Hancock County, *Marsano, J.*) held a hearing on the Eatons' motion for a TRO on August 8. At the end of the day, the court suspended the hearing and scheduled it to resume on August 29.[1] The court also consolidated the *Town of Stonington v. Cormier,* CV–96–76, and *Eaton v. Cormier,* CV–96–8, pursuant to M.R. Civ. P. 42.

[¶ 9] On October 14 and 15, 1997, the Superior Court (Hancock County, *Marsano, J.*) conducted a bench trial on the consolidated

1. This hearing never occurred.

matter. After the trial, the court issued an order denying injunctive relief and awarding $5,000 to the Eatons and $5,000 to the Town. As preliminary matters, the court found that Cormier was the primary defendant and that the Eatons had not properly pled a claim for nuisance. With regard to the Town's claim, the court found that "there were violations [of the Ordinance] on at least the following dates": July 1, September 13, September 20, September 23, October 10, October 25, and December 10, 1996; and January 6 and 13, 1997. With regard to the Eatons' NIED claim, the court found that the Eatons had suffered "distress and anguish."

## I. THE EATONS' CLAIMS

### A. Negligence Per Se

[¶ 10] Cormier contends that the court erred by treating the violation of the Ordinance as negligence per se. We have stated that the "violation of a safety statute is not negligence per se, but only evidence of negligence." *French v. Willman*, 599 A.2d 1151, 1152 (Me.1991) (quoting *Dongo v. Banks*, 448 A.2d 885, 889 (Me.1982)). There is no language suggesting that the court treated the violation of the Ordinance as negligence per se. Rather, the court explicitly referred to the violations of the Ordinance as "evidence of negligence."

### B. Negligent Infliction of Emotional Distress

[¶ 11] Cormier contends that the court erred in awarding the Eatons damages for NIED because there is no evidence that the Eatons suffered serious[2] emotional distress. Serious emotional distress exists " 'where a reasonable person normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the event.' " *Gayer v. Bath Iron Works Corp.*, 687 A.2d 617, 622 (Me. 1996) (quoting *Rowe v. Bennett*, 514 A.2d 802, 805 (Me.1986)). The distress does not

have to be manifested by "objective symptomatology." *Gammon v. Osteopathic Hosp. of Maine, Inc.*, 534 A.2d 1282, 1284 (Me.1987) (quoting *Culbert v. Sampson's Supermarkets, Inc.*, 444 A.2d 433, 437 (Me.1982)).

[¶ 12] Competent evidence supports the court's finding that the Eatons suffered from serious emotional distress. Mr. Eaton testified that he suffered from throbbing headaches and depression. Mrs. Eaton testified that the noise has caused her neck muscles to tighten. As a result, she was given muscle relaxants and a collar. Given this testimony, the court did not err in finding that the Eatons suffered serious emotional distress. *See Gammon*, 534 A.2d at 1283 (holding that the evidence supported plaintiff's NIED claim where plaintiff had nightmares, his personality was affected and his relationship with his family deteriorated).

### C. Nuisance

[¶ 13] The Eatons contend that the trial court erred in concluding that their nuisance claim was not properly before the court. We agree.

[¶ 14] Modern notice pleading practice requires "a short and plain statement of the claim" to provide fair notice of the cause of action, M.R. Civ. P. 8(a)(1), but use of any particular "magic" words are not required to state a particular claim. We construe the "pleadings in favor of the pleader and in the interests of substantial justice." *Chiappetta v. LeBlond*, 505 A.2d 783, 785 (Me.1986); M.R. Civ. P. 8(f). " 'The function of the complaint is to provide fair notice of a claim.' ... It must sufficiently apprise defendants of the nature of the action against them." *Bolton v. Caine*, 584 A.2d 615, 617 (Me.1990) (quoting *Rubin v. Josephson*, 478 A.2d 665, 669 n. 4 (Me.1984)).

[¶ 15] "The essence of a private nuisance is an interference with the use and enjoyment of land." W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 87, at

---

**2.** The decided cases use the term "severe" and "serious" interchangeably to describe the degree of emotional distress necessary to support a negligent infliction of emotional distress claims. Compare *Gammon v. Osteopathic Hosp. of Maine, Inc.*, 534 A.2d 1282, 1283 (Me.1987) (us-ing "severe") with *Gayer v. Bath Iron Works Corp.*, 687 A.2d 617, 622 (Me.1996); *Culbert v. Sampson's Supermarkets, Inc.*, 444 A.2d 433, 437–438 (Me.1982) (using "serious"). For consistency "serious" is used in this opinion.

619 (5th ed.1984). In their complaint, the Eatons state that the defendants' operation of the quarry "generated noise, dust and interfered with Plaintiffs' possession and use of their property and residence," and that the defendants' "cutting and burning ... deprived Plaintiffs of the safe and quite enjoyment of their home." By echoing language that describes the essence of a private nuisance complaint, the Eatons' complaint provided Cormier and the Temple fair notice of a claim that the operation of the quarry resulted in a nuisance.[3]

[¶ 16] The Eatons requested both injunctive and monetary relief as remedies for their nuisance claim.

### D. Damages

[¶ 17] The Eatons contend that the court erred in awarding them only $5,000 for NIED. The amount of damages to be awarded is a "factual matter generally within the sole province of the [factfinder]." *Lawrence v. Saunders,* 539 A.2d 1102, 1103 (Me.1988) (citation omitted). We will not disturb an award of damages unless "it is plain that there is no rational basis upon which the amount of the award may be supported ... or the jury acted under some bias, prejudice, or improper influence, or reached its verdict by compromise." *Id.* (citations omitted). No error is indicated in the court's award of $5,000 on the Eatons' NIED claim.

### E. Joint and Several Liability

[¶ 18] Finally, the Eatons argue that the trial court erred in treating Cormier as the primary defendant rather than holding Cormier and the Temple jointly and severally liable. We disagree.

[¶ 19] Proximate cause is a question of fact, *Searles v. Trustees of St. Joseph's College,* 1997 ME 128, ¶ 8, 695 A.2d 1206, 1209, which we will set aside only if clearly erroneous, *McGraw v. S.D. Warren Co.,* 656 A.2d 1222, 1224 (Me.1995). A factual determination is clearly erroneous only if

"there is no competent evidence in the record to support it." *Id.*

[¶ 20] The Temple owns the land, but Cormier operates the quarry. Given that Cormier was directly responsible for the complained of conduct—stone burning—there was competent evidence in the record to support a finding that Cormier was the primary defendant.

[¶ 21] On remand, the court must determine whether Cormier and the Temple are jointly and severally liable for causing a nuisance. An owner of land that consents to an activity on his or her land that causes a nuisance is subject to liability for the nuisance if "the possessor knows or has reason to know that the activity is being carried on and that it is causing or will involve an unreasonable risk of causing the nuisance." RESTATEMENT (SECOND) OF TORTS § 838 (1979).

## II. THE TOWN'S CLAIM

### A. Land Use Citation and Complaint

[¶ 22] Cormier contends that the trial court erred in imposing a penalty for violations of the Ordinance on days not specifically alleged in the Town's land use citation and complaint. We disagree.

[¶ 23] A land use citation and complaint "shall contain ... the time and place of the alleged violation or, *if they are not known,* the time and place at which it was first observed by the complainant ...." M.R. Civ. P. 80K(c)(1) (emphasis added). The language of the Rule does not limit the complainant's recovery to the times and places alleged in the complaint. Instead, it contemplates occasions when the complainant will not know the exact time and place of all violations. Therefore, Cormier's contention that the court cannot impose a penalty for violations at times not specifically alleged in the complaint is without merit.

[¶ 24] In addition, Cormier and the Temple had fair notice that the Town was accusing

---

3. This does not mean that an opposing party does not have the right to know, in advance of trial, *exactly what causes of action will be* pressed. The nature of the cause of action and the legal theories to be presented must be set out

with clarity in any pretrial memorandum, M.R. Civ. P. 16(d), or report of conference of counsel, M.R. Civ. P. 16(c). Moreover, the exact nature of the cause of action may be the subject of discovery. M.R. Civ. P. 26(b)(1).

them of violating the Ordinance on occasions not specifically alleged in the original complaint. *See Rubin,* 478 A.2d at 669 n. 4. ("The function of the complaint is to provide fair notice ...."). The original complaint, after alleging three specific violations, proceeded to state that "it is believed that the violation is *an ongoing one* ...." (Emphasis added.). Following the complaint, the Town filed a contempt complaint and an amended contempt complaint which together alleged more than eleven additional violations. The original complaint and the subsequent contempt complaints sufficiently apprised Cormier and the Temple of the "nature of the action against them." *See Bolton,* 584 A.2d at 617.

### B. Noise Control Ordinance

 [¶ 25] Cormier also contends that the court erred in finding that the individuals who measured the noise level were qualified to do so pursuant to the Ordinance. We disagree.

[¶ 26] The Ordinance provides that "the town's Noise Control Officer, equipped with a[sic] approved sound level meter, may investigate" a citizen complaint. "Noise Control Officer" is defined as "[t]he municipal employee trained in the use of sound level meters as authorized under this ordinance."

[¶ 27] Either Paul Blanchette or Roger Stone measured the level of noise on those occasions for which the court found violations of the Ordinance. Both Blanchette and Stone were municipal employees when they recorded the level of noise. Blanchette is the town manager. Stone is the Town's alternate local plumbing inspector. In addition, Stone serves as the superintendent of the Stonington Water Company. Both Stone and Blanchette testified that as superintendent, Stone was an employee of the Town. Blanchette and Stone were also both trained in the use of the sound level meters. Given that both Stone and Blanchette were municipal employees and trained in the use of sound level meters, the court did not err in finding that they were qualified as noise control officers as defined by the Ordinance.

The entry is

Judgment affirmed as to the Town of Stonington v. Cormier, CV–96–76. Judgment vacated as to Eaton v. Cormier, CV–96–8. Remanded for further proceedings consistent with this opinion.

