2000 ME 65

Manford F. EATON et al.

v.

Francis A. CORMIER et al.

Supreme Judicial Court of Maine.

Argued April 4, 2000.
Decided April 13, 2000.

Christopher J. Whalley (orally), Ellsworth, for plaintiffs.

Edmond J. Bearor (orally), Rudman & Winchell, LLC, Bangor, for defendants.

Before WATHEN, C.J., and CLIFFORD, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Francis A. Cormier and the Galilean Gospel Temple appeal from the judgment entered in the Superior Court (Hancock County, *Marsano, J.*) finding them jointly and severally liable for a private nuisance created by quarrying activities, awarding $20,000 in damages to Manford and Helen Eaton and granting the Eatons a permanent injunction that restricts quarrying activities to the hours between 10:00 a.m. and 2:00 p.m. Monday through Friday. The Eatons cross-appeal and argue that the court erred by not completely enjoining all quarrying activity and by limiting its damage award. We affirm the judgment.

[¶ 2] This is the second time this case is before us. *See generally Town of Stonington v. Galilean Gospel Temple*, 1999 ME 2, 722 A.2d 1269. We previously determined that the Eatons had properly pled a cause of action for nuisance against Cormier and the Temple and remanded for a trial on the issue, as well as for a determination of whether Cormier and the Temple should be held jointly and severally liable should a nuisance be found. *See id.* at ¶¶ 13–16, 722 A.2d at 1272–74. We will not restate the facts recited in our opinion in *Galilean Gospel Temple* that led to the parties' first appeal.

[¶ 3] Following our remand, the court conducted a hearing in which it took notice of evidence introduced in the prior proceeding and heard additional evidence regarding conditions on the Eatons' property since the prior proceeding. It also heard testimony from officials of the Town of Stonington regarding their monitoring of the noise levels generated by the quarry and testimony from Cormier's son who acts as foreman at the quarry. The court then issued its decision in which it found that the quarrying activities constituted a

private nuisance and from which the parties appeal.

■ [¶ 4] We review the issuance of an injunction for an abuse of discretion. *See State v. Shattuck*, 2000 ME 38, ¶ 23, 747 A.2d 174, 180. Furthermore, a court has broad discretion to fashion a remedy that will do complete justice when granting a remedial injunction. *See id.; see also* 17 M.R.S.A. § 2702 (1983) (noting that a court may order a nuisance abated or removed at the defendant's expense once one is found to exist). We cannot say that after balancing the equities in this case, the court abused its discretion by issuing an injunction that considerably restricted the quarry's activities, but nevertheless allowed for limited operations to continue. *Cf. Daugherty v. Ashton Feed and Grain Co., Inc.*, 208 Neb. 159, 303 N.W.2d 64, 70 (1981) (affirming trial court's injunction restricting operation of equipment at a grain and feed storage facility to certain hours of the day and weekdays only); *DeNucci v. Pezza*, 114 R.I. 123, 329 A.2d 807, 810 (1974) (affirming trial court's injunction limiting activities associated with freight terminal to daytime only and noting that scope and quantum of relief rests in the sound discretion of the trial court).

■ [¶ 5] With respect to the determination of damages, we have made clear that a damage award is the sole province of the factfinder and that we will disturb a damage award only if there is no basis in the evidence for it. *See Tang of the Sea, Inc. v. Bayley's Quality Seafoods, Inc.*, 1998 ME 264, ¶ 8, 721 A.2d 648, 650. Specifically, with respect to a nuisance that is not permanent in nature, i.e., one that is susceptible to abatement, we have noted that a landowner is "entitled to be compensated for the depreciation in the . . . usable value of the property caused by the nuisance . . . during the continuance of the injury, together with such special damage . . . as may be proved." *Pettengill v. Turo*, 159 Me. 350, 356, 193 A.2d 367, 372 (1963). This compensation may include elements for inconvenience and annoyance.

*See Gillison v. Farrin*, 632 A.2d 143, 144 (Me.1993).

■ [¶ 6] Conversely, although we have recognized the well-established principle that "coming to the nuisance" does not act as a bar to a suit for nuisance, *see Jacques v. Pioneer Plastics, Inc.*, 676 A.2d 504, 508 (Me.1996) (citing RESTATEMENT (SECOND) OF TORTS § 840D (1979)), it is not wholly irrelevant to a determination of the appropriate remedy in a nuisance action, *see, e.g., Escobar v. Continental Baking Co.*, 33 Mass.App.Ct. 104, 596 N.E.2d 394, 397–98 (1992) (noting that it is "a significant factor in determining what is fair and reasonable"). We cannot say that the court's damage award has no basis in the evidence before it, and therefore, we will not disturb the award.

■ [¶ 7] Finally, as we noted in our last opinion in this case, a landowner is liable for a nuisance created by the activity of a third party on the land if (1) the possessor knows or has reason to know that the activity is being carried on and that it is causing or will involve an unreasonable risk of causing the nuisance, and (2) the possessor consents to the activity or fails to exercise reasonable care to prevent the nuisance. *Galilean Gospel Temple*, 1999 ME 2, ¶ 21, 722 A.2d at 1273 (citing RESTATEMENT (SECOND) OF TORTS § 838 (1979)); *see also State v. Charpentier*, 126 N.H. 56, 489 A.2d 594, 599 (1985) ("liability for common law nuisance may be established if the landowner knew or had reason to know that a public nuisance existed") (citing RESTATEMENT (SECOND) OF TORTS §§ 838 & 839 (1979)); *Benton v. Montague*, 253 N.C. 695, 117 S.E.2d 771, 776 (1961) ("the owner of land is not liable for injury caused by the acts of a licensee *unless such acts constitute a nuisance which the owner knowingly suffers to remain* ") (emphasis added).

■ [¶ 8] It is clear that the Temple consented to Cormier carrying on the activity that caused the nuisance in this case, therefore the real issue for purposes of

determining joint and several liability is whether the Temple knew or had reason to know that the activity "involve[d] an unreasonable risk of causing the nuisance." RESTATEMENT (SECOND) OF TORTS § 838(a) (1979). As the comment to this portion of the Restatement notes, however, "if the possessor has reason to believe ... that the activity itself creates an undue risk of a nuisance ... he is liable for the harm caused by the activity." *See id.* at § 838 cmt. e. Given Cormier's relation to the Temple and the degree of his involvement in the quarrying operation, we cannot say that the court committed clear error when it found that Cormier's knowledge was imputable to the Temple and that the Temple was therefore aware of the risk of nuisance the activity posed. Therefore, the court did not err when it determined that Cormier and the Temple are jointly and severally liable for the nuisance.

The entry is:

Judgment affirmed.