STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-98-202

DHM - KEN - 8/22/2000

CYNTHIA M. KUETER,

Plaintiff

v.

CHRYSLER FINANCIAL CORPORATION
and AMERICAN AUTO TRANSPORT
& RECOVERY,

Defendants

ORDER ON DEFENDANTS'
MOTIONS FOR
SUMMARY JUDGMENT

This matter is before the court on defendant Chrysler Financial Corporation's motion for summary judgment on all remaining claims in the complaint and defendant American Auto Transport & Recovery's motion for summary judgment on all remaining claims in the complaint.

On December 12, 1996, plaintiff Cynthia Kueter bought a 1995 pickup truck from, and secured financing for it through, Morong Brunswick. Morong Brunswick assigned this loan to defendant Chrysler Financial Corporation ("Chrysler"). Kueter stopped making the payments for her truck and efforts were then begun by Chrysler and defendant American Auto Transport & Recovery ("American Auto") to force Kueter to turn over the truck for repossession or to resume making payments. This lawsuit arises out of the defendants' efforts to resolve this matter. On August 5, 1998, Kueter filed, pro se, a 38-page complaint against Chrysler. Chrysler removed this action to the United States District Court for the District of Maine. On motion for a more definite statement, Kueter filed a 39-page amended complaint.

Thereafter, Kueter retained counsel and on an unopposed motion to amend the amended complaint, Kueter filed a second amended complaint. This complaint adds American Auto as a defendant and asserts five counts brought under the common law and state and federal statutes. Ultimately, the United States District Court granted defendants' summary judgment on all of Kueter's claims brought under the Maine and Federal Fair Debt Collection Acts on the grounds that those claims were barred by the statute of limitations. The United States District Court then remanded the remaining state claims to this court. In considering these remaining claims, the United States District Court noted:

> Although Kueter only requests relief under the MFDCPA and the FFDCPA, she has alleged that Defendants violated the Maine Consumer Credit Code and the common law. Based on her Amended Complaint, it is unclear what common law violations, other than trespass, she is asserting.

Following remand, both defendants filed separate motions for summary judgment on the remaining claims in the complaint.

Before this court can consider the merits of the summary judgment motions, it must first decide what are the remaining claims in the complaint. There is a dispute between the parties as to whether count I properly asserts a claim under the Maine Consumer Credit Code, 9-A M.R.S.A. § 5-116(A), (B), because, although it alleges a violation of that code, it does not request judgment pursuant to that statute. Second, there is a dispute as to what common law claims are alleged. Although the parties agree that count III alleges a claim for trespass, Kueter asserts that her complaint also alleges claims for intentional infliction of emotional distress

2

and negligent infliction of emotional distress in count I and negligent and intentional misrepresentation in count II.

Regarding the claim under the Maine Consumer Credit Code, M.R. Civ. P. 54(c) states that "every judgment shall grant the relief to which the party in whose favor it is rendered is entitled even if the party has not demanded such relief in his pleadings." Thus, under the plain language of the rules, Kueter was not required to request relief under the Consumer Credit Code in order to be awarded such relief.[1]

Chrysler relies on *Rodriguez v. Doral Mfg. Co.*, 57 F.3d 1168 (1st Cir. 1995) in arguing that absent a request for judgment, this claim was not properly pled and, therefore, must be dismissed. In that case, the First Circuit found that Rule 54(c) of the Federal Rules of Civil Procedure "creates no right to relief premised on issues not presented to, and litigated before, the trier." (Quoting *Dopp v. HTP Corp.*, 947 F.2d 506, 618 (1st Cir. 1991)). "Thus, Rule 54(c)'s concern for appropriate relief does not include relief which a plaintiff has foregone because of failures in the pleadings or in the proof."[2] However, that is not the situation presented in the instant case. Kueter has properly alleged a violation of the Maine Consumer Credit Code. She

---

[1] *See also* 2 Field, McKusick & Wroth, *Maine Civil Practice*, § 54.4 at 10 (2nd ed. 1970) ("A plaintiff should receive the judgment to which he is entitled where the defendant has actually appeared and litigated, or had the opportunity to litigate, the issue, without being limited to his ad damnum or other demand for judgment.").

[2] In *Rodriguez*,
[t]he plaintiff wholly failed to plead a Law 17 claim. Her complaint did not delineate such a claim when filed; she did not add one by formal amendment; she did not mention the statute in her pretrial filings; and she did not explicitly refer to it at any point during the trial. In short, this is not a case in which a properly pleaded legal theory has been obscured by the parties' concentration on other theories, . . . but, rather, a case in which a particular legal theory was never so much as a gleam in the pleader's eye.

was not required to allege anything more in order to obtain relief under that code. Thus, this claim is properly before this court.

Whether Kueter has properly alleged claims of intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent and intentional misrepresentation, is less clear. "Modern notice pleading practice requires 'a short and plain statement of the claim' to provide fair notice of the cause of action, M.R. Civ. P. 8(a), but use of any particular 'magic' words are not required to state a particular claim." *Town of Stonington v. Galilean Gospel Temple*, 1999 ME 2,¶ 13, 722 A.2d 1269. The court is required to construe the "pleadings in favor of the pleader and in the interests of substantial justice." (Quoting *Chiappetta v. LeBlond*, 505 A.2d 783 (Me. 1986)). "'The function of the complaint is to provide fair notice of a claim.' . . . It must sufficiently apprise defendants of the nature of the action against them" *Bolton v. Caine*, 584 A.2d 615 (Me. 1990) (quoting *Rubin v. Josephson*, 478 A.2d 665, 669 n.4 (Me. 1984)). "This notice-giving function of pleading is 'sufficiently performed by a rather generalized statement.'" *Richards v. Soucy*, 610 A.2d 268 (Me. 1992) (quoting 1 Field, McKusick & Wroth, *Maine Civil Practice* § 8.2 at 192-93 (2nd ed. 1970)).

Kueter asserts that count I alleges claim of intentional infliction of emotional distress and negligent infliction of emotional distress. Count I is entitled "Harassment and Abuse" and alleges that "[d]efendants' actions in their attempts to collect a debt and repossess Plaintiff's vehicle constitute harassment and abuse under the common law and the Maine Fair Debt Collection Practices Act, . . . and the

4

Maine Consumer Credit Code, . . . ." None of the factual allegations incorporated into count I mention or allege that Kueter has suffered from emotional distress as a result of defendants' actions.[3]

Kueter's original complaint, filed pro se, did specifically allege a claim for intentional infliction of emotional distress. However, the amended complaint, filed by her attorneys, only included the above-mentioned allegations and does not mention intentional infliction of emotional distress or negligent infliction of emotional distress. The purpose of the complaint is to provide the defendant with fair notice of the claims asserted against him. The allegations in count I do not fulfill this purpose with regard to claims of intentional infliction of emotional distress or negligent infliction of emotional distress. While it is true that pleading a cause of action does not require the use of "magic" words or particularized allegations, something more than "harassment and abuse" and "under the common law" must be alleged to plead claims for negligent infliction of emotional distress and intentional infliction of emotional distress. This court finds that the complaint does not properly allege these claims.

The plaintiff asserts that count II of the complaint alleges claims for negligent and intentional misrepresentation. Count II is entitled "False and Misleading Representations" and alleges that "[d]efendants' intentional, frequent, and persistent

---

[3] The only place Kueter has mentioned emotional distress is in count I, paragraph 38, where she alleges that as a result of the defendants' violations of the two statutes, she has suffered, among other things, "severe emotional distress and immediate fear for her life." Not only is this allegation specific to Kueter's statutory claims, but in opposing the summary judgment motions, she does not even rely on it as support for her claim that she has sufficiently pled claims for negligent infliction of emotional distress and intentional infliction of emotional distress.

5

representations and implication that the Plaintiff's refusal to allow Defendants to repossess [the] vehicle would result in her immediate arrest constitute false and misleading representations under the common law and the Maine Fair Debt Collection Practices Act . . . ." Plaintiff's original complaint alleged claim for fraud. The complaint clearly states that defendants made "intentional . . . representations . . . [which] constitute false and misleading representations under the common law . . . . " Considering this clear allegation of intentional conduct, count II does not provide defendants with any notice of the claim for negligent misrepresentation. Conversely, these same allegations appear to be sufficient to alert the defendants to the existence of a claim for intentional misrepresentation. Thus, the court finds that count II alleges common law claim of intentional misrepresentation.

American Auto argues that it is entitled to summary judgment on Kueter's claim under the Maine Consumer Credit Code because that code only applies to creditors and it is not a creditor with respect to Kueter. It notes that 9-A M.R.S.A. § 5-201(1) specifically states that if a "creditor" has violated the provisions of the Act, the aggrieved consumer has a right to recover actual damages. American Auto also cites the court to the definition of creditor in section 1-301.

Kueter first argues that under the allegations in the complaint, she could prove that American Auto is a creditor for the purposes of the Consumer Credit Code. She notes that paragraph 4 of her complaint states that all of the allegations therein are made against both defendants because she did not know, at that point in time, which actions were done by Chrysler itself and which were done by American

6

Auto by itself, or on behalf of Chrysler. She then cites the test for deciding whether a complaint states a claim for relief.[4] A review of the plaintiff's statement responding to American Auto's statement and her statement of additional facts reveals no allegation that American Auto was the creditor that extended Kueter credit in order to buy the truck at issue in this case. In fact, she admits that the truck was financed through Chrysler. Kueter has failed to raise a genuine issue of material fact with regard to whether American Auto is a creditor in regards to the transaction at issue, i.e., the financing of the truck. Thus, the issue is whether claims under the Consumer Credit Code can be asserted against entities which are not creditors.

The plaintiff argues that the "statute establishing prohibited actions under the Code," 9-A M.R.S.A. § 5-116, provides that "a person" attempting to collect an alleged debt shall not, among other things, use or threaten force or violence, nor threaten criminal prosecution. Thus, she concludes that one does not have to be a creditor in order to be held liable under the Act. Regarding section 5-201(1), Kueter notes that the provision states that "[i]f a creditor has violated the provisions of this Act . . . any aggrieved consumer has a right to recover actual damages from a person

---

[4] This argument is meritless as the pending motion is one for summary judgment, not a motion to dismiss. Summary judgment does not test the allegations in the complaint but rather looks to see if the party opposing the motion has raised a genuine issue of material fact in his or her statement of material facts. Thus, if Kueter is claiming that American Auto is a creditor, she needed to support this claim with facts in her statement of material facts.

violating this Act . . . ." Thus, she concludes that if a creditor has violated the Act, she is entitled to recover from anyone who has also violated the Code.[5]

Section 5-116 is located in Article V, entitled "Remedies and Penalties" Part 1, including section 5-116, specifically pertains to limits on the remedies that can be taken by creditors. That section lists a number of activities that "a person" shall not take "[i]n attempting to collect an alleged debt arising from a consumer credit sale." As already noted, the Legislature made a distinction between person and creditor when it enacted the Consumer Credit Code, as evidenced by the fact that they provided separate definitions for each of those terms. Section 5-116 specifically uses the word person, as opposed to creditor. Thus, the plain language of section 5-116 would seem to prohibit both creditors and non-creditors from taking the actions listed therein in collecting a debt arising from a consumer credit sale.

However, section 5-116 does not give consumers the right to seek damages for alleged violations of the Act. Rather, section 5-201, gives consumers that right. Located in Article V, Part 2, entitled "Consumers' Remedies," that section states that "[i]f a creditor has violated the provisions of this Act applying to . . . illegal, fraudulent or unconscionable conduct in an attempted collection of debts, section 5-116, any aggrieved consumer has a right to recover actual damages from a person violating this Act . . . ." 9-A M.R.S.A. § 5-201(1) (1997). Kueter interprets this section's later use of the word "person" as evidence that she is entitled to recover

---

[5] Although not mentioned by Kueter, her position is somewhat supported by the fact that the Code defines both creditor and person. *See* 9-A M.R.S.A. § 1-301(17), 29 (1997).

8

damages from non-creditors, such as American Auto, when a creditor has also violated the Act.

The introductory clause, "[i]f a creditor has violated the provisions of this Act," modifies or qualifies the later clause allowing a consumer to recover damages "from a person violating this Act." In other words, this court interprets the legislative language to mean that the two phrases should be read together and thus read, they seem to be referring to the same person -- the person violating the Act, which the first clause identifies as the creditor. Further support for this interpretation seems to come from section 5-201(7), (8), (10). Each of these subsections discusses defenses that can be raised by a "creditor" in an action for damages brought by a consumer. If Kueter's interpretation is correct, then non-creditors being sued under the Act are not entitled to assert any of the defenses listed in section 5-201, including that the actions taken were "unintentional and the result of a bona fide error." "Statutory language should be construed to avoid absurd, illogical or inconsistent results." *Fleet Bank of Maine v. Griffin*, 1997 ME 45, ¶ 8, 690 A.2d 981. Interpreting section 5-201 to allow a consumer to sue non-creditors leads to such an absurd, illogical and inconsistent result. Specifically, non-creditors sued for violations of the Act will be precluded from asserting all of the statutory defenses that a creditor could assert from the same alleged violations. Additionally, section 5-201(9) gives the consumer the right to recover costs and reasonable attorney's fees

9

from a creditor that has violated the Act. Thus, a consumer suing a non-creditor is not entitled to attorney fees, but is entitled to such fees in a suit against a creditor.[6]

Chrysler does not argue that it is entitled to summary judgment on this claim on the merits, but rather only argues that Kueter has not sufficiently pled this cause of action and, therefore, it should be dismissed. As discussed above, the plaintiff has sufficiently pled this cause of action. The facts alleged in Kueter's statement of additional material facts raise a genuine issue of material fact with regard to whether Chrysler, in their attempts to collect on the debt, threatened criminal prosecution and used or threatened force or violence.

The plaintiff argues that the defendants have not moved for summary judgment on her claim of intentional misrepresentation.[7] American Auto has responded that it has moved for summary judgment on all counts of the claim and therefore is seeking summary judgment on this claim as well. American Auto argues that the plaintiff has failed to present evidence to satisfy the specific elements of this claim, including justifiable reliance on any alleged misrepresentation made by it.

---

[6]Plaintiff also claims that even if she cannot sue American Auto under the Code as a "person," there is no suggestion that American Auto is not liable as the agent of Chrysler, who American Auto concedes is a creditor under the Code. This court reaches no conclusion as to whether Chrysler can be responsible as principal for actions of its agents, American Auto, under the Code, as the issue was not presented to it. This court only holds that American Auto cannot be sued under the Code.

[7] To prevail on a claim of fraudulent misrepresentation, a plaintiff must show that (1) defendant made a false representation, (2) of a material fact, (3) with knowledge of its falsity or in reckless disregard of whether it is true or false, (4) for the purpose of inducing plaintiff to act in reliance upon it, and (5) plaintiff justifiably relied upon the representation as true and acted upon it to her damage. *Mariello v. Giguere*, 667 A.2d 588 (Me. 1995).

Apparently because Kueter asserts that defendants have not sought summary judgment on this claim, she has not included any facts in her statement of material facts pertaining to the elements of this claim. Neither of the defendants mentioned this claim even though they sought summary judgment on all of the remaining claims in the complaint. None of the parties have briefed the issue of summary judgment on this claim. Therefore, the court does not rule on this issue.

> A defendant moving for a summary judgment has the burden to assert those elements of the cause of action for which the defendant contends there is no genuine issue to be tried. "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion."

*Corey v. Norman, Hanson & Detroy,* 1999 ME 96, 742 A.2d 933 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). Defendants have failed to inform this court which elements of this cause of action they were challenging when they filed their motions for summary judgment. A plaintiff is only obligated to establish a prima facie case for each element of her cause of action challenged by defendant. Because defendants failed to inform the court and Kueter of the elements of this cause of action that they are challenging in their motions, Kueter was unable to fulfill her responsibility in opposing the motions. Consequently, the court will not rule on the summary judgment motions with regard to this claim at this time.

The plaintiff alleges two instances of trespass, one on June 6, 1997, and the other on June 19, 1997. Ms. Kueter alleges that on June 6, 1997, she received a series of telephone calls from persons allegedly associated with the defendant Chrysler. During one telephone call, she gave to the caller directions for the precise location of

11

plaintiff's residence. She alleges that at a later time, she spoke by phone with a person who identified herself to plaintiff as a skip tracer on behalf of Chrysler who, during the conversation, made threats and said, "They were right up the road and they were going to come . . ." Ms. Kueter then says that 20 minutes later, two men with walkie-talkies and a dog trespassed on her property. The plaintiff says that on June 19, 1997, two men in identical white polo shirts sat in a green truck outside of her house and ate their lunch. They had a walkie-talkie or a cell phone and she says she could hear her name mentioned plus "car four." Plaintiff indicates she had received several calls from "out of area" telephone sources which she believes were from Chrysler. Ms. Kueter then goes on to say that the men from the green truck jimmied open the front door and came into her house. She alleges that the men used this specific door that plaintiff had described to Chrysler, even though it was not the door to which there was a path. In all other respects, in spite of repeated inquiry in various depositions, the plaintiff has been unable to present any evidence of association of either defendant with the actions of the individuals on the two dates in question. At various times she "presumes" that they were sent there by one or more of the defendants, she believes that the activity is in the "style" of procedures used by American Auto. At one point she believed the persons to be federal marshals there to effectuate an arrest on behalf of Chrysler, at other times she believed they were sheriffs deputies there on behalf of the defendants and at one point plaintiff states her position that "I had the force of absolute logic to believe I was going to be arrested."

On June 12, 2000, the plaintiff filed with the court an additional statement of material facts in support of her objection to the motions for summary judgment of the defendants. Paragraph 1 is addressed to the incident on June 6, 1997, and paragraph 2 relates to the incident on June 19, 1997. Because the defendants invite the court to examine the allegations by the plaintiff to determine whether there is any evidence linking the defendants, or either of them, to persons described in the two incidents, the court specifically finds from plaintiff's statement these facts. Plaintiff's first contact with American Auto was on April 7, 1997. She was told she would have to talk to "Charlie." She assumed Charlie worked for American Auto. Charlie threatened to have her arrested. On June 6, 1997, she received a telephone call from a woman who identified herself as a lawyer for Chrysler. During this phone call, in order to effectuate delivery of a Federal Express parcel, plaintiff gave this woman the exact directions to her home. Shortly thereafter, a representative for Chrysler reneged on an agreement arranged with the plaintiff. Shortly thereafter, an employee of Chrysler came on the telephone line and threatened to arrest the plaintiff. "Sometime later," plaintiff received a phone call from an employee of Chrysler who said they would have her arrested if she did not tell them where the truck was. "Later," she received a phone call from a person who identified herself as a "skip tracer" hired by Chrysler financial. That person told the plaintiff that "they were up the road and they were going to come . . . ." Twenty minutes later, two men with walkie-talkies and a dog trespassed on plaintiff's property. The men "zoomed down [the] driveway, . . . got out . . . and started

13

running around the end of the house," using plaintiff's name. The men did not knock on the door and left. Plaintiff believes these men were sent by Chrysler because there had been many drive-bys in a previous period, she had been told that they were watching her "day and night," the print-out from Chrysler confirmed "activity on that day," and the men had dogs and walkie-talkies.

If a factfinder were to believe that within 20 minutes of being told that representatives of Chrysler were to come to her home and further find that individuals did, in fact, come to her home within that period, there are genuine issues of material fact to be decided by the jury. In spite of plaintiff's reliance on "absolute logic," none of the other facts as presented in her statement would support such an inference.

Accepting plaintiff's assertions as to the facts related to the June 19, 1997 event, she states that two identically dressed men in a green truck sat outside her home and ate their lunch. They had a walkie-talkie or cell phone, stated her name and made reference to "Car Four." On the same day, plaintiff received several telephone calls which registered on her caller I.D. as "out of area." Previous calls from Chrysler registered the same. The men stated that they "saw no one in sight." The plaintiff tried to hide in her house but, "after the men caught sight of her, they jimmied open the front door and came into her house." In entering the plaintiff's building, they "used the specific door" that plaintiff had told Chrysler to go to, "even though it was not the door to which there was a beaten path." The plaintiff believes that the men were representatives of Chrysler and/or American Auto because

14

American Auto had been hired by Chrysler to repossess her vehicle, her printout specifically states that "Charlie stated that he wanted to repossess plaintiff's truck personally and that she was hiding the truck," the printer indicates that "Charlie followed Ms. Kueter on the day she was picked up by a friend" and American Auto billed Chrysler for the repossession. Plaintiff goes on to quote from her deposition:

> I don't think that's possible because there is no logical explanation for what they did, even from the very beginning. In every way, nothing makes sense. Why drive over someone's lawn? Why park two feet away from the door? Why park two feet from the door that Chrysler said they were going to send someone to? Why say my name? Why say Car Four? Why say no one is in sight? Why say try the front door? Nothing makes sense.

Plaintiff admits that initially she believed the men were United States Marshals but now believes "absolutely" they were agents from Chrysler. The truck was eventually repossessed by American Auto. Finally, plaintiff asserts that "one of Mrs. Kueter's lawyers told her that the men who had trespassed on her property were not federal agents but were repo men and that she should call the police."

Nothing in these facts substantiates a relationship between the defendants, the individuals in the green truck, and the repossession efforts of the defendants to enable a factfinder to reasonably infer that such activities were the responsibility of the defendants, or either of them. Consequently, the allegations of trespass of which she wishes to hold defendants responsible as occurring on June 19, 1997, does not present sufficient facts to cause the court to conclude that there is a genuine issue.

15

For all the foregoing reasons, the entry will be:

Defendants' motions for summary judgment GRANTED IN PART and DENIED IN PART; defendants' motions for summary judgment are GRANTED as to plaintiff's complaint for intentional infliction of emotional distress and negligent infliction of emotional distress as found in count I of plaintiff's complaint, judgment for defendants on count I to the extent it claims intentional infliction of emotional distress and negligent infliction of emotional distress; defendants' motions for summary judgment are GRANTED on plaintiff's claim in count II for negligent misrepresentation and DENIED on plaintiff's complaint in count II for intentional misrepresentation, judgment for defendants on plaintiff's claim of negligent misrepresentation as found in count II of her complaint; motion for summary judgment of defendant American Auto Transport & Recovery is GRANTED as to plaintiff's claim in count I of her complaint for relief under the Maine Consumer Credit Code, Title 9-A, judgment for defendant American Auto Transport & Recovery on count I of plaintiff's claim for relief under the Maine Consumer Credit Code; defendant Chrysler Financial Corporation's motion for summary judgment is DENIED as to plaintiff's claim in count I for relief under the Maine Consumer Credit Code; defendants' motions for summary judgment on the trespass claim as alleged in count III of plaintiff's complaint are GRANTED as to the events of June 19, 1997, judgment for the defendants on the claim of trespass on June 19, 1997, defendants' motions for summary judgment on the trespass claim in count III of plaintiff's complaint are DENIED with respect to the events of June 6, 1997.

Dated: August 23, 2000

_____
Donald H. Marden
Justice, Superior Court

16

STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-98-202

CYNTHIA M. KUETER,

     Plaintiff

v.

CHRYSLER FINANCIAL CORPORATION
and AMERICAN AUTO TRANSPORT
& RECOVERY,

     Defendants

ORDER ON DEFENDANT
CHRYSLER FINANCIAL
CORPORATION'S MOTION
FOR SUMMARY JUDGMENT
ON ITS COUNTERCLAIM

This matter is before the court on motion for summary judgment by defendant Chrysler Financial Corporation on its counterclaim for possession of a motor vehicle. This matter arises out of a repossession proceeding wherein plaintiff, by her complaint, complains of the actions of defendant Chrysler Financial Corporation in its attempts to repossess a vehicle in conjunction with a financing arrangement. In December of 1996, the plaintiff purchased a 1995 pickup truck and financed same through the dealer who assigned the loan to the defendant. As part of the pleadings, defendant Chrysler Financial Corporation has counterclaimed seeking possession of the vehicle in question. That vehicle is a 1995 Ford pickup truck purchased December 17, 1996, vehicle identification no. 1FTCR14A1STA10615.

Chrysler asserts in its counterclaim that Kueter has defaulted on her financing and security agreement with it and, therefore, it is entitled to possession of the vehicle. Specifically, it is alleged that the last payment Chrysler received was on August 18, 1998. In its motion for summary judgment, Chrysler asserts that it has

shown that it is entitled to possession of the vehicle and that pursuant to the Forcible Entry and Detainer Statute, 14 M.R.S.A. § 6012, Kueter is now required to show cause as to why possession should not be turned over to Chrysler. In paragraph 4 of its statement of material facts, Chrysler asserts:

> Ms. Kueter's last payment to C.F.C. was on August 18, 1998. Ms. Kueter freely admits that despite retaining possession of the truck she has not paid C.F.C. since August 1998. She also does not dispute the fact that she no longer has a right to possession of the vehicle, and that C.F.C. can reacquire possession of the vehicle. (See Exhibit E, Deposition of Cynthia Kueter on November 23, 1999, page 299-300).

In response to these factual allegations, Kueter states in paragraph 4 of her statement of material facts responding to Chrysler's statement:

> Paragraph 4 of C.F.C.'s DSMF is controverted. The testimony it recounts is immaterial to the issues presented by defendants' motions for summary judgment.

First, Kueter's assertion that the facts in paragraph 4 of Chrysler's statement are immaterial to the issues presented by the pending motions is error. Chrysler has moved for summary judgment on its counterclaim for possession of the vehicle as the result of Kueter's default. Thus, her payment history and position regarding her right to possess the vehicle are relevant to this counterclaim.

Further, Kueter's summary assertion that the facts in paragraph 4 are "controverted," without any citation to record evidence supporting that claim, does not meet the requirements of M.R. Civ. P. 7(d)(2). Under that rule, the party opposing a motion for summary judgment is required to file a "separate, short and concise statement of the material facts, supported by appropriate record references, as to which it is contended that there exists a genuine issue to be tried." He or she is

2

"obligated to produce specific controverting facts exposing the existence of a genuine issue." *Searles v. Trustees of St. Joseph's College*, 1997 ME ---, 695 A.2d 1206 (quoting *Cloutier, Barrett, Cloutier & Conley, P.A. v. Wax*, 604 A.2d 42 (Me. 1992)). These facts must be supported by appropriate citations to the record and material not supported by record references will not be considered by the court. *Handy Boat Serv., Inc. v. Professional Servs., Inc.*, 1998 ME 134, ¶ 16, 711 A.2d 1306. Failure to controvert specific paragraphs in the moving party's statement of material facts constitutes noncompliance with M.R. Civ. P. 7(d)(2) and will result in the facts not properly controverted being deemed admitted. *Prescott v. State Tax Assessor*, 1998 ME 250, ¶ 6, 721 A.2d 169.

Kueter's unsupported claim that the facts in paragraph 4 of Chrysler's statement are controverted does not satisfy her obligations under Rule 7(d)(2). She must provide this court with citations to specific record evidence supporting her claim that those facts are controverted. Having failed to do so, she has deemed to have admitted the allegations in that paragraph. Thus, Kueter is deemed to have admitted that her last payment on the truck was on August 18, 1998, that she no longer has a right to possession of the vehicle, and that Chrysler can reacquire possession of the vehicle.

Kueter has not come with any evidence showing that she still has a right to possess the truck. She claims in her brief to the extent her claims survive summary judgment she still retains a possessory interest in the vehicle. This assertion is not supported by any citation to authority. It is undisputed that there is a contract

3

requiring Kueter to make installment payments for the truck and she has defaulted on that obligation. Thus, she no longer has a right to possession of the vehicle. Whether plaintiff has a claim for damages against Chrysler arising from their attempts to repossess the truck remains to be seen, but she does not have any current right to possession. By her failure to meet the requirements to put facts in issue, she has admitted she has no right to possession and that Chrysler could repossess at any time.[1]

The entry will be:

Chrysler Financial Corporation's motion for summary judgment on its counterclaim as to possession of the vehicle is GRANTED; partial judgment for defendant Chrysler Financial Corporation is ORDERED; writ of possession to issue to Chrysler Financial Corporation on a 1995 Ford truck, vehicle identification no. 1FTCR14A1STA10615.

Dated: August 22, 2000

Donald H. Marden
Justice, Superior Court

---

[1] The court also notes that 9-A M.R.S.A. § 5-201(5) (1997) provides that "[e]xcept as otherwise provided, no violation of [the Consumer Credit Act] impairs rights on a debt."

4

Date Filed 8/5/98  Kennebec  Docket No. CV98-202
County

Action Damages

## J. MARDEN

Cynthia Kueter                    vs.    Chrysler Financual Corp

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|

Plaintiff's Attorney

XXynthiaXXueterX
XXRXXXBoxXX350XXXYKXXXXaXXXleXXXSXX
XXOaklandxxMexxX6963x

-WILLIAM ROBITZEK ESQ
PO Box 961
LEWISTON MAINE 04243

Defendant's Attorney
David P Very Esq
PO Box 4600
Portland Me 04112

 -JOHN WALKER ESQ
  1321 WASHINGTON AVE
  PORTLAND MAINE 04103

DONALD L. GARBRECHT
LAW LIBRARY

SEP 11 2000

| Date of Entry | |
|---|---|
| 8/5/98 | Complaint filed.  s/Kueter,Pro Se<br>$120.00 filing fee paid, receipt # 31907.<br>PT scheduling statement mailed to Ms Kueter<br>Answer filed.  s/Kueter,Pro Se |
| 8/17/98 | Motion to amend by addendum pursuant to M.R. Civ.P. 15(a) filed.<br>s/Kueter,Pro Se<br>Amending of complaint by addendum to add exhibits (Pursuant to M.R. Civ.P<br>15(a) filed.  s/Kueter,Pro Se |
| 11/2/98 | Notice informing the Court of address change filed.  s/Kueter,Pro Se |
| 11/2/98 | Amended certificate of service filed.  s/Kueter,Pro Se |
| 11/5/98 | Original Summons with return service made upon Chrysler Financial Corporation<br>on11/4/98, filed.<br>Motion to Enlarge Time for Return of Service Pursuant to M.R.Civ.P<br>6(b)(2), filed.  s/Cynthia Kueter, Pro Se |
| 11/6/98 | MOTION TO ENLARGE, Humphrey, J.<br>Motion granted as prayed.<br>Copies mailed to Pltf. |
| 11/24/98 | Notice of filing Notice of removal to United States District Court, filed.<br>s/Gamache, Esq.   (attached Exhibit)<br>Certificate of Service, filed. s/Gamache, Esq. |
| 4/7/00 | ORDER AND MEMORANDUM, filed. Kravchuk, U.S. Magistrate Judge<br>Therefore, the Courts **GRANTS** summary judgment[Docket Nos. 38&40] to both<br>Defendants with regard to Kueter s claims under the MFDCPA and the FFDCPA,<br>**REMANDS** the remaining claims to the state court  AATR s Motion to Dismiss<br>[Docket No. 33] is moot.<br>**SO ORDERED**. |
| 4/11/00 | Request for hearing on defendant American Auto Transport & Recoverys<br>motion for summary judgment filed.  s/Very Esq |