2002 ME 50

**Robert H. CARTER et al.**

v.

**Kevin D. WILLIAMS et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 10, 2002.
Decided: March 29, 2002.

Martha J. Harris, Esq. (orally), Paine, Lynch & Harris, P.A., Bangor, for plaintiffs.

Shaun B. Lister, Esq. (orally), Law Office of Carl F. Rella, P.A., Bangor, for defendants.

Panel: SAUFLEY, C.J., CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Robert H. and Barbara A. Carter appeal from a judgment of the Superior Court (Waldo, *Hjelm, J.*) resolving their claims for wrongful death, loss of consortium, pecuniary loss, negligence, and negligent infliction of emotional distress (NIED) resulting from an incident in which a rock fell from a truck, injuring Barbara and causing the death of Karen Ann Carter, Barbara and Robert's nine-year-old daughter. The Carters contend that they are entitled to the statutory maximum of $150,000 for their loss of Karen's comfort, society, and companionship; that the court should have awarded them damages for pecuniary loss; that the court should have permitted their NIED claims, as well as the NIED claim of their surviving daughter, Jessica L. Carter; that Barbara is entitled to recover for the loss of Robert's consortium; and that the damages awarded are inadequate. Kevin D. Williams and Vaughn Thibodeau and Sons, Inc. (collectively, "the defendants"), cross-appeal, contending that the court erred in failing to waive post-judgment interest after their tender of the amount of the judgment. We vacate the court's decision as to Jessica's NIED claim and Robert's claim for pecuniary loss, and otherwise affirm.

## I. BACKGROUND

[¶ 2] On June 3, 1996, a rock from a truck operated by Williams, an employee of Vaughn Thibodeau and Sons, became airborne and broke through the windshield of the Carters' vehicle, striking Barbara, who was driving, on her left hand and shoulder before striking Karen in the head causing her death. Robert sat in the front passenger seat while Jessica, age five, sat directly behind him.

[¶ 3] Barbara and Robert, in their individual and representative capacities, sued the defendants, bringing claims for wrongful death; Karen's conscious pain and suffering; the negligent infliction of emotional distress on Barbara, Robert, and Jessica; negligence in causing Barbara's injuries; the pecuniary loss Barbara and Robert suffered as a result of Karen's death; Barbara and Robert's loss of each other's consortium; and punitive damages. The parties stipulated to the events of June 3, 1996, and to a number of other facts, including that "[t]he Estate of Karen A. Carter is entitled to maximum recovery for Karen's wrongful death, for the loss of her comfort, society and companionship." The stipulation requested the court to determine "whether Robert has a cognizable claim for pecuniary losses, including lost wages." Barbara and Robert withdrew their claims for Karen's conscious pain and suffering and for punitive damages.

[¶ 4] During the jury-waived trial, Barbara claimed medical expenses of roughly $25,000, lost wages of roughly $4300, and other expenses of about $2400. Robert claimed approximately $23,000 in lost wages because to help his family following the accident, he worked locally instead of travelling as a ship's chief engineer. The court awarded $83,812.10 on the wrongful death claim; $7500 on Jessica's NIED claim for witnessing the injury to Barbara; $100,000 for Barbara's personal injuries; $30,000 for Robert's loss of consortium; costs; and prejudgment interest "at the statutory rate." The court found for the defendants on Barbara's, Robert's, and Jessica's NIED claims from witnessing Karen's death, Robert's NIED claim from witnessing Barbara's injuries, and Bar-

bara's claim for loss of consortium. As to the claims for pecuniary loss, the order stated: "These claims are predicated on theories of liability addressed elsewhere in this order and the damages issues are considered in those contexts rather than separately here."

[¶ 5] After the Carters submitted a bill of costs, the defendants objected to it. The parties also disagreed about the calculation of interest pursuant to the judgment. In an attempt to terminate the accrual of interest, the defendants tendered a check that, according to the accompanying letter, "represents payment of the judgment," but "does not represent payment of pre-or post-judgment interest, or of costs." The Carters returned the check, stating that interest and costs must be paid first. The court held a conference in chambers, after which it determined the method for calculating prejudgment interest. The court concluded that any tender must be applied first to interest and costs.

## II. DISCUSSION

### A. Statutory Maximum for Loss of Comfort, Society, and Companionship

■ [¶ 6] Robert and Barbara contend that they are entitled to $150,000—the maximum amount of recovery for loss of comfort, society, and companionship permitted by the wrongful death statute as it existed when they commenced their action. 18–A M.R.S.A. § 2–804(b) (1998). The defendants contend that Robert and Barbara are entitled to $75,000—the maximum permitted by the statute as it existed when Karen suffered her fatal injury. 18–A M.R.S.A. § 2–804(b) (1981), as amended by P.L.1989, ch. 340.[1]

■ [¶ 7] Amendments to the wrongful death statute's caps do not apply retroac-

tively. *Greenvall v. Me. Mut. Fire Ins. Co.*, 2001 ME 180, 788 A.2d 165. Although this cause of action accrued after the Legislature had enacted the Public Law establishing the $150,000 cap, the accident occurred before the law's effective date of July 4, 1996. P.L.1995, ch. 577, § 1; L.D. 742 (117th Legis.1995). The court properly applied the $75,000 cap.

### B. Pecuniary Damages to Robert and Barbara

■ [¶ 8] Robert and Barbara contend that the pecuniary loss they suffered due to Karen's death is not so speculative as to preclude recovery.

■ [¶ 9] "Damages may not be awarded when the proof is speculative. When the evidence offered to show prospective damages is in the nature of mere guesswork and conjecture, the factfinder will be unable to determine the plaintiff's loss with reasonable certainty." *Snow v. Villacci*, 2000 ME 127, ¶ 13, 754 A.2d 360, 364–65 (citations omitted) (internal quotation marks omitted). Damages are recoverable if they are grounded on facts established by the evidence, not surmise and conjecture. *Tang of the Sea, Inc. v. Bayley's Quality Seafoods, Inc.*, 1998 ME 264, ¶ 8, 721 A.2d 648, 650; *Williams v. Ubaldo*, 670 A.2d 913, 917 (Me.1996). We will not vacate a determination that a party failed to meet his burden of proof unless the evidence compels a contrary finding. *Schlear v. James Newspapers, Inc.*, 1998 ME 215, ¶ 3, 717 A.2d 917, 918.

[¶ 10] It is inherently difficult to determine pecuniary loss upon the death of a child. In *Graffam v. Saco Grange Patrons of Husbandry, No. 53*, 112 Me. 508, 92 A. 649 (1914), we stated that an eleven-year-old who suffered an accidental death might have provided financial assistance to his

---

**1.** The current cap is $400,000. 18–A    M.R.S.A. § 2–804(b) (Supp.2001).

mother during the next twenty years if he "had been industrious and frugal, and had not taken on other domestic burdens by marriage," but that "[a]ll these elements . . . are more or less speculative," existing in "the realm of possibility not the realm of certainty." *Id.*, 112 Me. at 511, 92 A. at 650–51. Similarly, we stated in another case that "a majority of children, eight years of age, will have cost their parents during their lifetime, a much larger outlay than they will have contributed to their benefit." *Curran v. Lewiston, Augusta & Waterville St. Ry. Co.*, 112 Me. 96, 99, 90 A. 973, 974 (1914).

[¶ 11] The court did not err in concluding, based on the evidence presented, that the pecuniary injury to Barbara and Robert resulting from Karen's death was too speculative to be determined to the necessary degree of certainty.

### C. Robert and Barbara's NIED Claims for Witnessing Karen's Death

■ [¶ 12] Robert and Barbara contend that the wrongful death statute does not prevent them from recovering for the emotional distress they suffered as bystanders. According to them, wrongful death statutes, designed to reverse the common law rule that a cause of action does not survive a decedent, are not intended to limit claims brought by individuals based on witnessing a close family member's death. The defendants contend that the Maine statute precludes separate claims for any emotional distress arising from the facts alleged in the wrongful death claim.

[¶ 13] Maine's wrongful death statute, as it existed at the time of Karen's death, provided, in pertinent part:

> The jury . . . may give damages not exceeding $75,000 for the loss of comfort, society and companionship of the deceased, including any damages for emotional distress arising from the same

facts as those constituting the underlying claim, to the persons for whose benefit the action is brought . . . .

18–A M.R.S.A. § 2–804(b) (1981), as amended by P.L.1989, ch. 340.

[¶ 14] The statute does not distinguish between cases in which the heirs witness the death of the decedent, but instead explicitly states that the maximum recovery includes all emotional distress damages arising from the same facts. Because the NIED claims of Barbara and Robert were based on the same facts as their wrongful death claim, the court properly concluded that they may not bring NIED claims separate from the wrongful death claim.

### D. Jessica's NIED Claim

■ [¶ 15] Jessica contends that she is entitled to damages for the emotional distress she suffered from witnessing Karen's death because she is not an heir to Karen's estate and does not share in the wrongful death claim. 18–A M.R.S.A. § 2–103(2) (1998). She contends that her injury resulted not only from the death, but from *witnessing* the fatal injury.

[¶ 16] The defendants contend that Jessica cannot recover pursuant to the wrongful death statute and that she cannot pursue a separate NIED claim. According to the defendants, it would be inconsistent with the intent of the wrongful death statute to allow Jessica, but not her parents, to recover for bystander emotional distress.

■ [¶ 17] "[F]or a bystander to recover for emotional distress proximately caused by a defendant's negligence toward another person, the bystander must demonstrate that she was present at the scene of the accident; that she suffered serious mental distress as a result of contemporaneously perceiving the accident; and that she was closely related to the victim."

*Champagne v. Mid–Maine Med. Ctr.,* 1998 ME 87, ¶ 13, 711 A.2d 842, 846.

■ [¶ 18] Maine's wrongful death statute, as it existed at the time of Karen's death, provided, in pertinent part: "[T]he amount recovered in every such action . . . shall be for the exclusive benefit of . . . the deceased's heirs . . . if there is neither surviving spouse nor minor children." 18–A M.R.S.A. § 2–804(b) (1981), as amended by P.L.1989 ch. 340. Maine's wrongful death statute includes as heirs "those persons related by blood, who take the personal estate of the deceased intestate;" thus, in the case of a child, the heirs are the child's parents if they are living. *Carrier v. Bornstein,* 136 Me. 1, 2, 1 A.2d 219, 220 (1938) (citing R.S. ch. 101, §§ 9–10 (1930), as amended by P.L.1933, ch. 113) (predecessor to 18–A M.R.S.A. § 2–804(b)).

■ [¶ 19] "Where the wrongful death statute applies . . . emotional distress claims may not be brought independently of the statute. In other words, where the wrongful death statute applies, plaintiffs may not circumvent the statute's damage cap by bringing a separate emotional distress claim." JACK H. SIMMONS et al., MAINE TORT LAW § 19.06 (2001 ed.). The beneficiaries of the wrongful death statute are limited to the remedies provided therein. *Feighery v. York Hosp.,* 38 F.Supp.2d 142, 157 (D.Me.1999); *Krempels v. Mazyck,* 868 F.Supp. 355, 357–58 (D.Me.1994).

[¶ 20] Because Barbara and Robert survived, they as Karen's parents are Karen's heirs and the wrongful death statute does not apply to Jessica. As a result, she is not a beneficiary who may only seek damages pursuant to the statute. Were we to conclude otherwise, Jessica would be left without any remedy, unlike her parents, who have a remedy pursuant to the wrongful death statute. The court should have permitted Jessica to recover on her NIED claim because the court's findings demonstrate that she met each element of the claim.[2]

### E. Robert's NIED Claim for Witnessing Barbara's Injuries

■ [¶ 21] Robert contends that the court erred in concluding that he failed to establish he suffered serious emotional distress from witnessing Barbara's injuries.

■ [¶ 22] "Serious emotional distress exists where a reasonable person normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the event." *Town of Stonington v. Galilean Gospel Temple,* 1999 ME 2, ¶ 11, 722 A.2d 1269, 1272 (internal quotation marks omitted).

[¶ 23] Robert received the maximum amount allowed by law for the grief he suffered as a result of his daughter's tragic death. In considering Robert's request for the additional emotional distress caused by observing his wife's injuries, the court found that the evidence was insufficient to establish the separate claim. We conclude that the evidence does not compel a different conclusion.

### F. Barbara's Loss of Consortium Claim

■ [¶ 24] Barbara contends that the wrongful death statute does not bar her claim for loss of consortium resulting from Robert's emotional injuries. According to her, the evidence supports a conclusion that she was injured by Robert's withdrawal following the injury to herself and the death of Karen. The defendants con-

2. Because we conclude that Jessica is entitled to recover on her NIED claim, we need not address her additional contention that her damages for witnessing Barbara's injuries should have included all her emotional distress damages arising from the negligent act.

tend that the court properly denied Barbara's claim because the wrongful death statute provides the exclusive remedy for any psychological injuries resulting from Karen's death.

[¶ 25] The court read the wrongful death statute to prevent Barbara's claim for loss of consortium because Robert's withdrawal resulted from the same facts as the wrongful death claim, allowing a separate claim would improperly permit recovery beyond the amount established in the wrongful death statute. We agree. Although a psychic injury to a spouse "can be sufficient to support a claim for loss of consortium," *Gayer v. Bath Iron Works Corp.*, 687 A.2d 617, 622 (Me.1996), the wrongful death statute limits recovery for emotional distress, and should be construed to limit recovery when the effects of that emotional distress extend to cause a fellow beneficiary's loss of consortium.

### G. Damages for Barbara's and Robert's Injuries

[¶ 26] Barbara contends that the court's award did not adequately compensate her for the injuries it acknowledged she suffered. Robert contends that he has suffered greater injuries than the court's award reflects because he had to cease travelling for his occupation, resulting in lost wages, and he had to take on extra responsibilities in the home to assist his wife. The defendants contend that the court did not commit clear error in calculating these damages.

[¶ 27] In general, we "will not substitute our judgment for that of the [fact finder] in assessing damages and will not disturb the [fact finder]'s damage award unless that award is a product of bias, prejudice, improper influence, or was reached under a mistake of law or in disregard of the facts ...." *Bradford v. Dumond*, 675 A.2d 957, 962 (Me.1996); *see*

*also Galilean Gospel Temple*, 1999 ME 2, ¶ 17, 722 A.2d at 1273 (stating an award will be disturbed if it lacks a rational basis).

[¶ 28] The court awarded Barbara more than the full amount she claimed for her medical and non-medical expenses, and lost wages. She does not provide any specific reasons in her brief for challenging the amount of the award. We affirm the award of damages to Barbara because the court's award has a rational basis and does not disregard the facts.

[¶ 29] As to Robert's claim of pecuniary loss, the court erred in failing to determine whether he established damages for lost wages. Although the court stated it would not award lost wages pursuant to Robert's loss of consortium claim, it erred in failing to determine whether he established wage loss damages pursuant to his separate claim for pecuniary loss.

### H. Post–Judgment Interest

[¶ 30] The defendants contend that the court erred in refusing to waive post-judgment interest after the Carters improperly refused to accept tender of the amount of the judgment. The Carters contend that the court's order was proper because the defendants did not move to waive post-judgment interest, and their letter to the Carters made clear that they intended to halt the accrual of interest by tendering the face value of the judgment. Moreover, according to them, the proceedings were not yet concluded because the court still had to decide whether to grant the motion to strike the Carters' bill of costs.

[¶ 31] "Post-judgment interest is an enforcement tool to ensure that, once litigants have successfully invoked the power of the courts, the award of just compensation will not be diminished by

delay in payment." *Moholland v. Empire Fire & Marine Ins. Co.*, 2000 ME 26, ¶ 7, 746 A.2d 362, 365. The post-judgment interest statute provides that, "[o]n petition of the nonprevailing party and on a showing of good cause, the trial court may order that interest awarded by this section shall be fully or partially waived." 14 M.R.S.A. § 1602–A (Supp.2001). We review the construction of the post-judgment interest statute de novo for errors of law. *Austin v. Austin*, 2000 ME 61, ¶ 8, 748 A.2d 996, 999–1000. The decision of whether to waive interest is discretionary with the court. *Id.* ¶ 10, 748 A.2d at 1000.

[¶ 32] The court did not err in declining to waive post-judgment interest because the letter accompanying the check stated that it would be applied to the judgment, not to costs and the interest accrued up to the date of tender. Any amount tendered must be applied to interest first, with the remainder applied to the judgment. Thereafter, interest would accrue on the unpaid portion of the judgment. The Carters were not required to accept the offer to pay the judgment and halt the accrual of interest.

The entry is:

Judgment on Jessica's NIED claim vacated and remanded for the determination of damages. Judgment on Robert's claim for pecuniary loss vacated and remanded for further findings. In all other aspects, judgment affirmed.