STATE OF MAINE
CUMBERLAND, ss

STATE OF MAINE
CUMBERLAND, ss
CLERK'S OFFICE

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-01-466
TEH-CUM- 3/20/2003

2003 MAR 20  A 8: 39

GREGORY L. BUTTERFIELD, Individually
and as Personal Representative of
the Estate of Brandy M. Butterfield, and
LINDA M. BUTTERFIELD, as Personal Representative
of the Estate of Brandy M. Butterfield,

Plaintiffs

v.

DECISION AND ORDER

JOE PETE SAUCIER and
NORFOLK & DEDHAM MUTUAL FIRE INS. CO.,

Defendants

DONALD L. GARBRECHT
LAW LIBRARY

APR 9 200

This matter is before the court for a determination of damages on the claims of the plaintiffs, as Personal Representatives of the Estate of Brandy M. Butterfield, against the defendant Saucier for wrongful death (Count I) and conscious suffering (Count II), and the claim of the plaintiff Gregory Butterfield against the defendant Norfolk & Dedham for breach of contract (Count V).

BACKGROUND

On December 12, 1999 Brandy Butterfield died. Moments before her death, she had been riding as a passenger in a pick-up truck operated by the defendant Joe Pete Saucier. Saucier had led police on a high speed chase that ended when the truck crashed into a concrete embankment, plunged fifteen to twenty feet into the Nonesuch River, and landed upside down in approximately three to four feet of water. When the pursuing officer arrived at the scene, Saucier was sitting in the water on the driver's side of the vehicle yelling that

the driver was still in the truck.

Additional police arrived. Sgt. Jipson and those officers went to both doors of the pick up. They were able to open the driver's side door, but not the passenger's. No one was inside. After five or ten minutes, Jipson got out of the water. Fire and rescue personnel arrived and Brandy was soon found unconscious beneath the bed of the truck on the passenger's side near the rear tire.

Brandy was later pronounced dead at Maine Medical Center. She was 21 years old at the time of her death and the plaintiffs are her parents and only heirs.

Saucier was not insured and the pick up truck was an uninsured vehicle. On September 27, 2001, a default was entered against him in this case. Brandy was insured under two separate policies with North East Insurance Company, each providing $50,000 in uninsured motorist coverage.[1] North East paid the limits of both policies to the plaintiffs in their capacity as the personal representatives of Brandy's estate.

Gregory Butterfield was a named insured under an automobile policy issued by the defendant Norfolk & Dedham that included uninsured motorist coverage. By order dated August 27, 2002, this court declared that the Norfolk & Dedham policy provided uninsured motorist coverage to Gregory for those damages which he is legally entitled to recover under Maine's wrongful death statute as an heir of Brandy Butterfield. *See* 18-A M.R.S.A. § 2-804.

---

[1]Brandy was the named insured under one of the policies. Her mother, Linda Butterfield, was the named insured under the other. At the time of her death, Brandy resided with her mother and qualified as an insured under the latter policy.

DISCUSSION

## I.   Claims Against Defendant Saucier

The wrongful death statute permits the personal representatives of an estate to seek damages for the benefit of the deceased's heirs (i) for the deceased's conscious pain and suffering, (ii) up to $150,000 for the heirs' loss of comfort, society and companionship of the deceased, including damages for emotional distress, (iii) for pecuniary loss to the heirs, (iv) for reasonable funeral expenses and medical expenses, and (v) up to $75,000 for punitive damages. 18-A M.R.S.A. § 2-804. With the exception of pecuniary damages for which there has been no evidence presented in this case,[2] Brandy's personal representatives seek to recover under the remaining categories of damages.

### A. Conscious Suffering

Based upon the credible direct and circumstantial evidence, the court concludes that Brandy endured conscious suffering in this case. She was not thrown from the interior of the vehicle and there were no signs of trauma to her body. The passenger door of the pick up could not be opened and it is not likely that she exited through the driver's door.[3] The only other exit from the interior of the pick up was the rear window of the truck's cab. It is reasonable to infer from the direct and circumstantial evidence that Brandy reached the point under the truck's bed where she was found by exiting the vehicle through

---

[2]It is inherently difficult to determine pecuniary loss upon the death of a child. *Carter v. Williams*, 2002 ME 50, ¶ 10, 792 A.2d 1093, 1097. Damages are not recoverable if they are speculative and not grounded on facts established by the evidence. *Id.* at ¶ 9 (citations omitted).

[3] Sgt. Jipson observed Saucier sitting in the water near the driver's door.

that window. Because of her size and that of the window, it is highly unlikely that this maneuver could have been performed if she was unconscious. Accordingly, the court concludes that it is more likely than not that Brandy was conscious inside the overturned truck and remained conscious during her exit from its cab and until she drowned beneath the pick up's rear bed.

Although the evidence does not allow a precise determination of the length of time that the young woman consciously suffered, there is sufficient evidence to permit a reasonable determination of damages. Sgt. Jipson observed the truck's lights "quite a ways ahead" as he pursued the vehicle on the dirt way leading to the river. The officer saw the lights go up, then drop straight down at the embankment. Jipson drove his cruiser near to the embankment, ran to its edge, and saw the overturned pick up. Within a "couple of minutes" he went into the water with other officers who had arrived at the scene. He got out of the water after five or ten minutes and Brandy was found unconscious a short while later. It is not known whether there was an air pocket available to Brandy or used by her either in the cab or the overturned bed of the truck. If there was, there is no way to tell how long she remained conscious, other than to know that she was not conscious at the moment she was found. If there was no air pocket, then she could not have remained conscious longer than the few minutes she could hold her breath.

The plaintiff has the burden on this issue and, understandably, can only meet it as to the shorter time period. Although the time necessary for her to lose consciousness in the drowning process have may have been brief, it had to have been harrowing and frightening beyond description. The court concludes

4

that $200,000 is an appropriate award for damages on account of Brandy's conscious suffering. It must be stressed that this modest amount is not intended to diminish or minimize the actual suffering that the court is convinced that Brandy endured. Rather, it is intended to fairly and accurately reflect the shorter duration of that suffering established by the plaintiff's proof.

B. Loss of Comfort, Society, Companionship and Emotional Distress

The court finds that Gregory Butterfield suffered a genuine loss of his daughter's comfort, society and companionship. Brandy was approximately 25 years old when she died. She was not married, had no children, and was financially independent. Although Brandy lived with her mother, she had a good relationship with her father and frequently visited with him.

The court also finds that Saucier's conduct was so extreme and outrageous as to exceed all possible bounds of decency, and that Gregory Butterfield suffered severe emotional distress as a result. *Maine Mutual Fire Insurance Co. v. Gervais*, 1998 ME 197, ¶ 12, 715 A.2d 938, 941, citing *Vicnire v. Ford Motor Credit Company*, 401 A.2d 148, 154 (Me. 1979); RESTATEMENT (SECOND) OF TORTS § 46; *Latremore v. Latremore*, 584 A.2d 626, 633 (Me. 1990) (severe emotional distress may be inferred from the extreme and outrageous nature of the defendant's conduct alone). "Serious emotional distress exists where a reasonable person normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the event." *Carter v. Williams*, 2002 ME 50, ¶ 22, 792 A.2d at 1099 (*citing Town of Stonington v. Galilean Gospel Temple*, 1999 ME 2, ¶ 11, 722 A.2d 1269, 1272 (internal quotation marks omitted)).

5

As a result of Brandy's death Gregory experienced substantial grief, anxiety, major depression, sleeplessness, headaches, loss of appetite, fatigue, oral sores, feelings of rage and helplessness, and loss of sexual function. He required medical treatment and counseling, and was prescribed a regimen of medications for depression, insomnia, headaches, and sexual dysfunction. These effects on Gregory impacted his health, his employment, and contributed to the breakdown of his marriage to Linda Butterfield. The court concludes that the statutory maximum of $150,000 is an appropriate award for damages on account of his emotional distress and the loss of his daughter's comfort, society and companionship.

C. Reasonable Funeral Expenses

The plaintiffs have submitted a claim of $7,899 for funeral expenses. Of this sum, the defendant challenges $2,400, which was the cost to purchase a headstone for Brandy's grave. Funeral expenses are a proper disbursement in the accounts of executors and administrators, and they may include the cost of a burial lot and a suitable monument or tombstone. *See In re Estate of Hill*, 131 Me. 211 (Me. 1932) (citations omitted). The court concludes that $7,899 is an appropriate award for reasonable funeral expenses.

D. Punitive Damages

Punitive damages are awarded to deter a defendant's intolerable conduct and are *not* based on the financial or insurance status of the plaintiff. *See Tuttle v. Raymond*, 494 A.2d 1353, 1355 (Me. 1985) (punitive damages are awarded to deter the defendant's conduct). "[I]n order to recover punitive damages, a plaintiff must prove by clear and convincing evidence that the

6

defendant acted with malice." *Id.* at 1354. Malice exists "where deliberate conduct by the defendant, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward a person injured as a result of that conduct can be implied." *Id.* at 1361. It is not established "by the defendant's mere reckless disregard of the circumstances." *Id.*

Saucier's conduct, both in the operation of the pick up truck and in his attempt to misdirect rescuers into believing that Brandy was the operator, is more than sufficiently outrageous to meet the test of implied malice. Under the circumstances, punitive damages is appropriate and the statutory maximum amount of $75,000 is warranted.

II.    Claim Against Defendant Norfolk & Dedham

In view of the foregoing determination that the total damages awarded in this case exceed $200,000, there is no need for the court to further determine the effect, if any, of the prior payments made under the North East policies upon Norfolk & Dedham's obligation under its policy with Gregory Butterfield. Quite simply, it owes the policy's entire $100,000 uninsured motorist benefit.

DECISION

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to enter this Decision and Order on the Civil Docket by a notation incorporating it by reference and the entry is

A.    As to Count I (Wrongful Death) of Plaintiffs' complaint, Judgment for Plaintiffs, as Personal Representatives of the Estate of Brandy M. Butterfield, against Defendant Saucier in the amount of $232,899, together with interest and costs;

7

B.   As to Count II (Conscious Suffering) of Plaintiffs' complaint, Judgment for Plaintiffs, as Personal Representatives of the Estate of Brandy M. Butterfield, against Defendant Saucier in the amount of $200,000, together with interest and costs; and

C.   As to Count V (Breach of Contract) of Plaintiffs' complaint, Judgment for Plaintiff Gregory Butterfield against Defendant Norfolk & Dedham in the amount of $100,000, together with interest and costs.

Dated:  March 19, 2003

_____
Justice, Superior Court

8

Date Filed **08-21-01**      **Cumberland**      Docket No. **CV-01-466**
                               County

Action     **DECLARATORY JUDGMENT**

| | |
|---|---|
| GREGORY L. BUTTERFIELD, Individually and as Personal Representative and LINDA M. BUTTERFIELD, as the Personal Representative of the Estate of Brandy M. Butterfield     vs. | JOE PETE SAUCIER defaulted<br>NORFOLK & DEDHAM MUTUAL FIRE INSURANCE CO |

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| THIMI R. MINA, ESQ.<br>12 City Center<br>Portland, ME 04101<br>(207) 772-6805 | PAUL S. DOUGLASS, ESQ. (Norfolk & Dedham)<br>471 Main Street<br>P.O. Box 1346<br>Lewiston, ME 04243-1346<br>(207) 786-0002 |

| Date of Entry | |
|---|---|
| **2001**<br>Aug. 23 | Received 08-21-01:<br>Complaint Summary Sheet filed. |
| "    " | Complaint filed. |
| "    " | Unserved Summons (2) filed. |
| "    " | Plaintiffs' Notification of Discovery Service filed.<br>Plaintiffs' First Request for Admissions Propounded to Defendant, Norfolk & Dedham served on Paul S. Douglass, Esq. on 08-21-01. |
| Aug. 24 | Received 08-24-01:<br>Acknowledgment of Acceptance of Service filed showing receipt of service on 08-23-01 upon Norfolk & Dedham Mutual Fire Insurance Co. to Paul S. Douglass, Esq. |
| "    " | Defendant Norfolk & Dedham Mutual Fire Insurance Co.'s Answer filed. |
| Sept. 12 | Received 09-12-01:<br>Summons filed showing officer's return of service on 08-27-01 upon Joe-Pete Saucier. |
| "    " | Summons and Acknowledgment of Acceptance of Service filed showing return of service on 08-23-01 upon Norfolk & Dedham Mutual Fire Insurance Company to Paul S. Douglass, Esq. |
| Sept. 14 | Received 09-14-01.<br>Defendant's, Norfolk & Dedham Mutual Fire Insurance Co., Notification of Discovery Service filed.<br>Defendant's Response to Plaintiff's First Request for Admissions Propounded to Defendant Norfolk & Dedham Mutual Fire Insurance Company Served on Thimi R. Mina, Esq. 09-13-01. |
| Sep. 24 | Received 09-24-01:<br>Scheduling Order filed. (Humphrey, J.).<br>Scheduling Order filed. Discovery deadline is May 24, 2002.<br>On 09-24-01 Copies mailed to Joe Peter Saucier at Maine State Prison, Thomaston, Maine 04861, Paul S. Douglass, Esq. jand Thimi R. MIna, Esq. |