**MAINE RUBBER INTERNATIONAL,**
Plaintiff

v.

**ENVIRONMENTAL MANAGEMENT
GROUP, INC. Defendant**

No. CIV.02–226–P–H.

United States District Court,
D. Maine.

June 14, 2004.

Kurt E. Olafsen, Portland, ME, for Maine Rubber International, Plaintiff.

Daniel Rapaport, Sigmund D. Schultz, Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, ME, for Environmental Management Group, Inc. d/b/a EMG, Defendant.

## ORDER ON DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON DAMAGES AND PLAINTIFF'S MOTION TO ALTER AND AMEND JUDGMENT

HORNBY, District Judge.

The primary issue on this motion for judgment as a matter of law after the jury's verdict is whether sufficient evidence was produced at trial to show that lost profits and out-of-pocket expenses were a reasonably foreseeable result of a breached contract to assess environmental conditions on real estate. I conclude that there was insufficient evidence to show that the parties contemplated lost profits as possible damages for breach at the time they entered the contract, but that out-of-pocket expenses the plaintiff paid to third parties in preparation for the move to the property were reasonably foreseeable damages, not speculative, and not against the weight of the evidence. I therefore GRANT IN PART AND DENY IN PART the defendant's Renewed Motion for Judgment as a Matter of Law. I DENY the defendant's Motion for a New Trial on damages. I GRANT the plaintiff's motion to include prejudgment interest.

### FACTS

■ In entertaining a motion for judgment as a matter of law, I review all the evidence in the record, and consider the evidence in a light most favorable to the nonmoving party (here, Maine Rubber), disregarding all evidence favorable to the moving party (here, EMG) that the jury was not required to believe. *See, e.g., Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150–51, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Maine Rubber International ("Maine Rubber") contracted with Environmental Management Group, Inc. ("EMG") to perform a Phase I Environmental Site Assessment on property Maine Rubber had contracted to purchase (the DuraStone property). Maine Rubber planned to relocate its tire manufacturing business to the DuraStone location. EMG's environmental site assessment came up clean, and Maine Rubber waived the environmental condition in its purchase and sale contract with DuraStone. Over six months later, the United States Environmental Protection Agency and the Maine Department of Environmental Protection found environmental hazards on the property. As a result, Maine Rubber terminated its contract to buy the DuraStone property. It proceeded with an expedited move to another location in Gorham, Maine, whereas it had planned on an orderly, phased, move to DuraStone. As a result, Maine Rubber lost profits and lost the benefit of expenditures it made in connection with the aborted move.

The jury found that EMG breached its environmental services contract with Maine Rubber. As a result of the breach, the jury awarded Maine Rubber a $1,900 refund of the contract price paid to EMG,

$211,625.51 for expenditures Maine Rubber paid to third parties working in anticipation of the DuraStone move, and lost profits in the amount of $486,600. Jury Verdict Form (Docket Item 168).

EMG now moves for a renewed judgment as a matter of law under Fed. R.Civ.P. 50(b) to reject the jury awards of lost profits and third party expenditures, and requests a new trial on damages. Maine Rubber moves to amend the judgment to add prejudgment interest.

## ANALYSIS

### (A) Procedural Posture

■ Maine Rubber argues that EMG waived its damage arguments by failing to move for judgment as a matter of law at the close of all the evidence: "it merely renewed the motions it made after Maine Rubber rested. These motions did not request judgment as a matter of law or otherwise challenge the sufficiency of the evidence." Pl.'s Mem. in Opp'n to Def.'s Mot. for J. as a Matter of Law ("Pl.'s Mem. in Opp'n") at 2 (Docket Item 184). Maine Rubber argues that all EMG did at the close of Maine Rubber's case in chief was to renew motions *in limine* and to exclude evidence of damages. I reject the argument. It was clear to everyone what relief EMG was seeking at the close of Maine Rubber's case-in-chief and at the close of all the evidence. When I invited motions at the end of the plaintiff's case-in-chief, EMG moved to "exclude" certain premium tire damages. Tr. of Proceedings at 2 (Docket Item 174). Maine Rubber understood that EMG was requesting judgment as a matter of law on that topic because its lawyer responded "We didn't present any evidence on that." *Id.* EMG then went on to move to "exclude" employee costs and to "exclude" lost revenue and lost profits and speculative damages. *Id.* With the exception of the lost revenue and

lost profits, I denied the motion without waiting for Maine Rubber's response. *Id.* at 3. As to lost revenue and lost profits, I stated:

> Let me hear from plaintiff's counsel, however, on the lost revenue and lost profit claim. I'm concerned there about the issue of special consequential damages as the Maine Law Court recognizes them and the question of whether special circumstances are brought to the attention of contracting parties as to how these fit within that.

*Id.* If there was any doubt about the nature of the motion, it should have been resolved by the next exchange between me and Maine Rubber's lawyer. He stated: "That had been briefed of course last week, Your Honor, or two weeks ago [when it was a motion *in limine*], I'll try not to repeat that." *Id.* I responded "Now in terms of the evidence," making clear that the question was whether there was sufficient evidence to go to the jury. *Id.* He understood that was the nature of the inquiry, because he concluded his remarks as follows:

> And I might add, the question of course is whether there are issues raised for the jury, obviously, and I think that does generate issues that a reasonable jury could find those damages are attributable to EMG.

*Id.* at 6. My ruling was:

> Given the status of the case, I am going to permit this issue to go to the jury. But I do have serious doubts about the foreseeability of the lost profit component of the damages. Let me explain that. Certainly there is evidence in the record that EMG knew that Maine Rubber was going to be buying this property and knew that evaluations were important for all the obvious reasons. The ordinary consequence of a failure by

EMG, however, would be damages along the lines of cleanup costs, perhaps delay resulting in terms of closing, things of that sort. The idea that they should have expected lost profits to occur to Maine Rubber, I don't have a lot of confidence that there's evidence from which the jury could reach that conclusion. But I do conclude that the better course here is to permit the issue to go to the jury, to see first of all what the jury does. And so I'm going to deny the motion, but I do so expressing great reservations about the ability of the plaintiff to recover the lost profits as distinguished from the other type of consequential or incidental damages which are more in the nature of reliance and expenditures that Maine Rubber claims it made based upon the clean bill of health that it got from EMG and going forward with the contract, then to discover later that in fact, there were problems with the DuraStone site.

*Id.* at 8.

It could not be clearer that the parties and I had treated the motion at the close of the plaintiff's case as a motion for judgment as a matter of law, whatever label EMG's lawyer had placed upon it. When EMG "renewed" its motions at the close of all the evidence and I made the same ruling, everyone knew what had happened. And contrary to Maine Rubber's suggestion, *see* Pl.'s Mem. in Opp'n at 3, the grounds for the motion were clear to everyone.

There was no procedural default and I proceed to the merits of the motion.

#### (B) Lost Profits

■ Special or consequential damages, like lost profits or reliance expenditures, are generally not recoverable. Under Maine law such damages are recoverable, however, if at the time the contract was formed they were or should have been reasonably foreseeable or contemplated by both parties as a probable result of a breach. *See Williams v. Ubaldo,* 670 A.2d 913, 918 (Me.1996) (citing *Forbes v. Wells Beach Casino, Inc.,* 409 A.2d 646, 654 (Me. 1979); *Susi v. Simonds,* 147 Me. 189, 190–91, 85 A.2d 178, 178–79 (1951); *Hadley v. Baxendale,* 9 Exch. Rep. 341. (1854)); *Rubin v. Matthews Int'l Corp.,* 503 A.2d 694, 696 (Me.1986) (citing *Winship v. Brewer School Comm.,* 390 A.2d 1089, 1095 (Me.1978); *Susi,* 85 A.2d 178). *See also* Arthur Linton Corbin, 11 *Corbin on Contracts* § 1035, at 178 (Interim ed.2002).

■ Thus, under Fed R. Civ. P. 50, judgment as a matter of law depends upon whether there was a "legally sufficient evidentiary basis" for a jury to determine that these damages were reasonably foreseeable at the time the contract was made. The only evidence as to the expectations of Maine Rubber and EMG at the time the contract was formed came from the testimony of Stuart Brown ("Brown"), former president and chief operating officer of Maine Rubber. Brown himself called EMG to order the Phase I Environmental Site Assessment. Everything EMG might reasonably have contemplated as a result of the breach specific to Maine Rubber it would have learned from Brown. According to Brown's testimony, he told EMG who Maine Rubber was and what it did for business. (There was no testimony by any EMG employee who recalled speaking with Brown or knowing anything about Maine Rubber's potential plans for moving to the DuraStone property.) Brown explained to EMG that Maine Rubber had a loan with Fleet Financial and that Fleet referred Maine Rubber to EMG because Maine Rubber was contemplating purchasing the DuraStone property.

There was no testimony that Brown discussed with EMG the benefits or advan-

tages of the DuraStone property compared to Maine Rubber's existing facility or any other potential site; no testimony that he told EMG about Maine Rubber's profit expectations at the new location; and no testimony that he told EMG that Maine Rubber had a phased move plan designed to prevent production and profit losses as a result of the move. Additionally, the low contract price for performing the site assessment, $1,900, suggests that the parties never contemplated the risk of liability for lost profits, here $486,600. *Cf.* Restatement (Second) Contracts § 351, cmt. f (1981).

EMG is in the business of performing environmental site assessments with corporate entities. A jury could reasonably conclude that EMG should be generally aware that its customers have financial stakes in the properties to be assessed. But lost profits are not the type of damages that the contracting parties would ordinarily expect as a result of a Phase I Environmental Assessment that failed to discover hazardous substances. Instead, as a result of an inadequate site assessment, the parties would reasonably expect expenses resulting from hazardous substances being on the property, *i.e.*, future cleanup costs on the site, fines for having toxins located on the property, lost resale value if the property was unusable, etc.

In the absence of any evidence that the parties contemplated Maine Rubber's lost profits as a consequence of breach at the time the contract was made or any evidence that lost profits would be generally expected for this type of breach, I conclude as a matter of law that Maine Rubber's lost profits were not reasonably fore-

seeable as a result of breach at the time contract was made. They are therefore not recoverable.

## (C) Reliance Expenditures

■■■ EMG argues that the jury's damages award for out-of-pocket expenses is speculative, disproportionate to the contract price, and against the weight of the evidence.[1] Under Maine law, speculative damages may not be awarded. *See, e.g., Carter v. Williams,* 2002 ME 50, ¶ 9, 792 A.2d 1093 (2002). The out-of-pocket expenses are certainly not speculative in the sense of being based upon conjecture; Maine Rubber presented at trial actual expenses it incurred in preparing for the DuraStone move, EMG argues that the amount is nevertheless speculative because Maine Rubber produced insufficient evidence at trial to show that in fact it would have terminated the DuraStone contract but for the EMG breach.

Proof that Maine Rubber would have terminated the contract earlier if it learned of environmental problems sooner certainly would be sufficient to establish causation for the claim for lost reliance expenditures. But that was not Maine Rubber's case. Instead, Maine Rubber presented evidence at trial that it learned of the environmental problems so late in the process that there was insufficient time to assess or cure them before the DuraStone closing date and therefore that it had little choice but to rescind the DuraStone contract and move elsewhere under time pressure, thereby losing the value of the amounts it had spent on the DuraStone acquisition.[2] In other words, Maine Rub-

---

1. EMG also argues that the jury awards for both lost profits and out-of-pocket expenses are inconsistent. This argument is moot in light of my ruling as to lost profits.

2. In my earlier order ruling on a motion *in limine* to exclude evidence of damages, I did say that out-of-pocket expenses are recoverable "[i]f the plaintiff can also establish that it would NOT have incurred these expenses if the defendant had discovered the environ-

ber's premise was not that earlier knowledge would necessarily have led to contract termination, but that it would have provided Maine Rubber with time to assess the problems and cure them rather than be forced into an expedited move to a different location, forfeiting the value of what it had spent on the DuraStone site. Thus, Maine Rubber did provide sufficient evidence from which the jury could find that EMG's breach forced Maine Rubber to terminate the DuraStone contract and caused Maine Rubber to lose the benefits of its out-of-pocket expenses. This conclusion also disposes of EMG's weight of the evidence argument.

A contract price's lack of proportionality to the loss may indicate whether such damages were foreseeable. *See* Restatement (Second) Contracts § 351 cmt. f. But here the out-of-pocket expenses paid by Maine Rubber to third parties on the aborted DuraStone move are exactly the type of reliance costs one would expect a prospective purchaser to spend in preparing to move to a new property. A defective Phase I assessment would obviously render many of these expenditures valueless when, like here, environmental hazards later were found on the property prior to closing and the land sale contract was terminated. Their value was lost to Maine Rubber when it cancelled the DuraStone move. EMG has performed hundreds of site assessments for commercial and industrial companies for the purpose of evaluating the environmental condition of prospective manufacturing sites. The evidence established that EMG knew that its reports were relied upon in real estate decisions and transactions and that the accuracy of these reports was important and that it knew Maine Rubber was obtaining this assessment with a view to acquiring the DuraStone property. EMG should reasonably have foreseen that its clean bill of health would lead to Maine Rubber making expenditures for engineering costs, legal fees, site plan consulting, site studies, public relations, geotechnical investigations and design work, and that those would be valueless if Maine Rubber later had to abort the move because of undiscovered environmental hazards.[3]

I therefore conclude that the jury's award of out-of-pocket reliance expenditures to Maine Rubber was not speculative, not against the weight of evidence, and not disproportionate to the contract price in a way that would make such damages unforeseeable when the contract was made.

## CONCLUSION

The defendant EMG's Renewed Motion for Judgment as a Matter of Law is GRANTED IN PART AND DENIED IN PART. The defendant EMG's Motion for New Trial on damages is DENIED. The plaintiff Maine Rubber's motion to amend the judgment to add prejudgment interest is GRANTED.

---

mental problem during its Phase One survey and if it was reasonable not to remediate the hazard and go forward with the Durastone site." *See* Order on Def.'s Mot. *in Limine*, at 2 (Mar. 31, 2004) (Docket Item 132). I therefore denied the motion. The ruling did not prevent Maine Rubber from articulating an alternative theory of causation as to the reliance damages. Here, the jury could have found that Maine Rubber terminated the contract at the last minute because it was concerned *about costs and consequences that* might not be rectified prior to closing, and that had it known of the environmental hazards earlier, it could have proceeded in a deliberate way to resolve them so that its out-of-pocket expenses in reliance on EMG's representations would have not become worthless.

3. *See generally* 11 *Corbin on Contracts* § 1035 (dealing with expenditures that "are made fruitless as an investment and become a 'dead loss' by reason of the breach").

The Clerk shall enter judgment for the plaintiff in the amount of Two Hundred Thirteen Thousand Five Hundred Twenty–Five Dollars and Fifty–One Cents ($213,-525.51), plus interest and costs on Count II.

So Ordered.