MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2016 ME 77
Docket:        Han-15-100
Submitted
 On Briefs:    September 28, 2015
Decided:       May 26, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.
Majority:      SAUFLEY, C.J., and MEAD, GORMAN, JABAR, and HUMPHREY, JJ.
Concurrence:   SAUFLEY, C.J., and GORMAN, J.
Dissent:       ALEXANDER, J.


JENNA GORDIUS

v.

RANDALL G. KELLEY et al.


JABAR, J.

[¶1]   Randall G. Kelley appeals from a judgment of the District Court (Ellsworth, *Mallonee, J.*) determining that he was not a de facto parent of Jenna Gordius's child.   Because key factual findings are in conflict in the court's findings, we must vacate the court's decision and remand for further proceedings.

## I.  BACKGROUND

[¶2]  The following facts are derived from the trial court's findings, and we review them with considerable deference.  *Buck v. Buck*, 2015 ME 33, ¶ 5, 113 A.3d 1095.

[¶3]  Kelley and Gordius were in a romantic relationship for approximately ten years before they were married in May 2012.  Gordius's child was born on

July 14, 2011, at a time when Gordius and Kelley were together but unmarried. Although the two had been living together for a number of years at the time of the child's birth, Arvide J. Pennartz is the biological father of the child. On April 27, 2012, shortly before Gordius and Kelley were married, Gordius filed a complaint in the District Court against Pennartz for a determination of paternity and parental rights and responsibilities. A year later, on May 22, 2013, the District Court entered a judgment that determined Pennartz's paternity, awarded Gordius and Pennartz shared parental rights and responsibilities, and granted Gordius primary residence of the child and Pennartz weekly contact.

[¶4] Both parties agree that while Gordius and Kelley lived together before their breakup on October 21, 2013, Kelley was very close to and supportive of Gordius's child. When Gordius filed for divorce following their breakup, Kelley filed a motion to modify the parental rights and responsibilities order entered between Gordius and Pennartz, claiming intervenor status as a de facto parent. The court granted Kelley's request that the divorce action and the motion claiming de facto parenthood be consolidated.

[¶5] Following a hearing on the consolidated matters on March 28, 2014, the court issued an interim order preliminarily granting Kelley de facto parent status and awarding him the right to have contact with the child "to be coordinated

with [Pennartz's] schedule." On this same date, the court granted a divorce to Gordius and Kelley.

[¶6] After a hearing on December 18, 2014, the court entered a final order on Kelley's claim for de facto parenthood. In that order, the court stated that "[a]lthough the terms of the [divorce] judgment [finding Kelley to be a de facto parent] were not expressed as temporary, the parties and the court treated them as such." The court also stated that it "remains convinced . . . that Mr. Kelley has undertaken a permanent, equivocal, committed, and responsible parental role in the child's life . . . and that Mr. Kelley's exclusion from [the child's] life will hurt the child." Despite these findings, the court concluded that Kelley failed to establish his status as a de facto parent to the child because the "circumstances cannot be deemed exceptional."

[¶7] Kelley filed a consolidated motion for further findings of fact and conclusions of law and a motion to alter or amend the judgment pursuant to M.R. Civ. P. 59(e). The court denied these motions and Kelley timely appealed.

## II. DISCUSSION

A.  Standard of Review

[¶8] Kelley argues that the court committed an error of law by failing to apply the proper standards in determining whether Kelley qualified as a de facto parent as articulated in *Pitts v. Moore*, 2014 ME 59, ¶¶ 18-29, 90 A.3d 1169

4

(plurality opinion). Gordius maintains that the court correctly determined that exceptional circumstances as outlined in *Pitts* are not present in this matter.

[¶9] Because the issues in this appeal concern application of the law of de facto parenting to the court's factual determination that Kelley did not meet a necessary element of de facto parenthood, as set out in *Pitts*, and because Kelley had the burden of proof, we must determine first whether the court correctly articulated the applicable law and, if so, whether the court properly applied the law to the facts in determining whether Kelley was a de facto parent.

B.     De Facto Parenthood

[¶10] "Despite [numerous] shifts in family . . . structure [in today's society], it remains firmly established that parents have a fundamental liberty interest to direct the care, custody, and control of their children." *Pitts*, 2014 ME 59, ¶ 11, 90 A.3d 1169 (quotation marks omitted); *see Troxel v. Granville*, 530 U.S. 57, 65 (2000). However, this right to parent is not absolute, and there are situations where interference with that right is constitutionally permitted. Whenever there is an attempted interference with that right, we must evaluate it with strict scrutiny. *Pitts*, 2014 ME 59, ¶ 12, 90 A.3d 1169. In *Pitts*, we held that the State's intrusion into the parent-child relationship is permitted only when "there is some urgent reason or there are exceptional circumstances affecting the child." *Id.* Before us is

one of those situations that will interfere with the normal parent-child relationship—a claim of de facto parenthood.[1]

[¶11] In *Pitts*, we held that a party seeking de facto parent status must prove two elements by clear and convincing evidence: first, that he or she has undertaken a permanent, unequivocal, committed, and responsible parental role in the child's life; and second, that there are exceptional circumstances[2] sufficient to allow the court to interfere with the legal or adoptive parents' rights.[3] *Id.* ¶ 27.

[¶12] Here, the trial court found that Kelley met the first prong of the two-part test, that Kelley "has undertaken a permanent, unequivocal, committed and responsible parental role in the child's life." Because neither party has challenged this finding by the court, we focus on the second prong of the test— whether there are "exceptional circumstances" sufficient to allow the court to interfere with the rights of the biological parents.

[¶13] In *Pitts*, we held that exceptional circumstances exist when harm to the child will occur if the party claiming de facto status is not acknowledged to be

---

[1] Once a court concludes that a party has established de facto parent status, that party is a parent for all purposes and the court must then determine his or her parental rights and responsibilities pursuant to 19-A M.R.S. 1653 (2014). *See generally C.E.W. v. D.E.W.*, 2004 ME 43, 845 A.2d 1146.

[2] *See* paragraph 18 of the Concurring Opinion for further discussion of the term "exceptional circumstances."

[3] Since our decision in *Pitts*, the Legislature has passed the Maine Parentage Act, effective on July 1, 2016. As the statute is not yet in effect, it is inapplicable to this case.

6

the child's de facto parent. *Id.* ¶ 29. In a plurality opinion, we explained the type of harm that needs to be found to justify interference with a parent's rights:

> We are not here announcing that "harm" in these cases must be the equivalent of "jeopardy" in title 22 cases. Nonetheless, a court contemplating an order that creates a parent out of a non-parent must *first determine that the child's life would be substantially and negatively affected* if the person who has undertaken a permanent, unequivocal, committed, and responsible parental role in that child's life is removed from that role.

*Id.* (emphasis added). In so writing, we were drawing on the language we had used to discuss *why* courts could permit this type of interference with a biological or adoptive parent's wishes: "to ensure that a child does not, without cause, lose the relationship with the person who has previously been acknowledged to be the [parent] through the development of the parental relationship over time." *Young v. Young,* 2004 ME 44 ¶ 5, 845 A.2d 1144. We explained that the exceptional circumstances allowing a court to so interfere exist only when "the child's life would be substantially and negatively affected if the person who has undertaken a permanent, unequivocal, committed, and responsible parental role in that child's life is removed from that role." *Pitts v. Moore,* 2014 ME 59, ¶ 29, 90 A.3d 1169, 1181.

[¶14] Although the trial court found that the child would be harmed by the removal of Kelley from the child's life, noting "that Mr. Kelley's exclusion from [his] life will hurt the child" and "the effect on children of these ruptured

relationships can be deeply wounding," the court concluded that "the circumstances are sadly unexceptional." Kelley requested further findings and conclusions, specifically asking the court to apply the de facto parent standards established by *Pitts*, and provided the court with proposed findings, as required by M.R. Civ. P. 52(b). The court denied the request.

[¶15] The court appears to have applied the requirement of "exceptional" circumstances in a generic fashion determining, in essence, that it is not unusual in today's world for a child to be harmed by these changes in adult relationships. Although the generic assessment of exceptionality may play a role in the court's final consideration of the facts, the court's focus must be on the child himself. The ultimate question is whether the harm to *this child* creates the exceptional circumstances that allow the interference with parental rights, i.e., whether the court determines, by clear and convincing evidence, that "the child's life would be substantially and negatively affected" if Kelley is removed from his "permanent, unequivocal, committed, and responsible parental role. . . ." *Pitts,* 2014 ME 59, ¶ 29, 90 A.3d 1169. Because the court did not reach the child-focused component of the analysis, it did not articulate whether the harm that it found would "substantially and negatively" affect the child's life.

[¶16] Because the trial court concluded that Kelley's removal from the child's life would cause the child harm without determining whether the removal

would "substantially and negatively" affect *this* child, we remand the case to the trial court.  Because children's needs may change with time, we leave the decision on whether to reopen the record for updated information to the discretion of the trial judge.

The entry is:

> Judgment vacated.  Remanded for further proceedings consistent with this opinion.

---

SAUFLEY, C.J., with whom GORMAN, J., joins, concurring

[¶17]  I concur in the Court's opinion and write separately to make clear that we vacate the judgment because it appears that the trial court misapprehended a legal standard and not, as the dissent suggests, because we disagree with the trial court's findings of fact.  Indeed, as the Court has noted, the trial court has not yet made a key factual finding.

[¶18]  The confusion in defining "exceptional circumstances" may have been caused by our own use of multiple terms to describe a single concept.  As we noted in *Pitts v. Moore*, the adjectives "urgent," "compelling," and "exceptional" are all "intended to address the heightened interest the State must present before it may interfere in a parent's right to raise a child."  2014 ME 59, ¶ 12 n.3, 90 A.3d 1169.  We have further elucidated this heightened interest by explaining that the

government may infringe on a parent's fundamental liberty interest if a failure to do so would "substantially and negatively" affect the child's life, *id.* ¶ 29 (plurality opinion), meaning that a failure of the government to act would have a "dramatic, and even traumatic, effect upon the child's well-being." *Rideout v. Riendeau*, 2000 ME 198, ¶ 26, 761 A.2d 291. Although we have articulated different formulations of what circumstances would constitutionally support an infringement on a parent's liberty interest to protect a child's well-being, these formulations all describe a unified concept related to the specific child before the court.

[¶19] In the matter at issue here, it appears from the judgment that the trial court understood the law to require it to determine whether Kelley had established "exceptional circumstances sufficient to allow the court to interfere" with parental rights, *Pitts*, 2014 ME 59, ¶ 27, 90 A.3d 1169, by evaluating whether the circumstances were unusual in the world at large. The dissent appears to understand the law similarly. We have, however, consistently interpreted the term "exceptional circumstances" to mean instead circumstances that are exceptional as to the individual child. *Id.* Thus, to prove the existence of "exceptional circumstances," Kelley was required to prove by clear and convincing evidence that the child would be harmed by Kelley's removal from his life and that the harm to this specific child would "substantially and negatively" affect the child's life, *id.* ¶ 29 (plurality opinion), meaning that Kelley's absence would have a "dramatic,

and even traumatic, effect upon the child's well-being," *Rideout*, 2000 ME 198, ¶ 26, 761 A.2d 291. Because the trial court found that many children may suffer similar harm, it did not reach findings with respect to the specific impact on this child.[4] Although confusion may have arisen from our language describing this critical aspect of the intersection of a parent's liberty interest with the State's interest in protecting the child from harm, with the clarity of the Court's decision today, the trial court should be able to apply the law to the facts developed at trial.

[¶20] To be clear, if, on remand, the court finds that Kelley has failed to prove that this child's life would be "substantially and negatively affected" such that the removal of Kelley from the role of a "permanent, unequivocal, committed, and responsible" parent, *Pitts*, 2014 ME 59, ¶ 29 (plurality opinion), would have a "dramatic, and even traumatic, effect upon the child's well-being," *Rideout*, 2000 ME 198, ¶ 26, 761 A.2d 291, we will affirm that determination unless the evidence compels a contrary finding, *Carter v. Williams*, 2002 ME 50, ¶ 9, 792 A.2d 1093. Here, however, we have identified a possible misapprehension of the law. We must, therefore, vacate the judgment and allow the trial court, on remand, to reach findings of fact applying the proper legal standard as we have clarified it today. Because it is the role of the trial court to decide the facts in the first instance, we

---

[4] We would certainly not say that, because many children suffer harm at the hands of drug addicted parents, the harm suffered by an individual child is unexceptional.

should not make assumptions about those factual findings where a misapprehension of the law exists.

_____

ALEXANDER, J., dissenting.

[¶21]  I respectfully dissent.

[¶22]  This appeal addresses a sad scenario that recurs hundreds or thousands of times a year in Maine—a child's parent with primary residence of a child has a long-term relationship with a friend, fiancée, or spouse who is not the child's biological parent.  The friend, fiancée, or spouse develops a positive, parent-like relationship with the child.  The child's parent and the friend, fiancée, or spouse then separate, and the child is saddened, or, as the trial court found here, "hurt" by the loss of contact with the now ex-friend, fiancée, or spouse.

[¶23]  The parent-like relationship between Randall Kelley and the child existed for approximately two years following the birth of the child, before Jenna Gordius and Kelley separated.  To that point, the relationship and the breakup tracked the scenario of thousands of similar cases,[5] circumstances the trial court found "sadly unexceptional."  Looking at similar separations, the trial court

_____

[5]  Including the scenario in *Pitts v. Moore*, 2014 ME 59, ¶¶ 1-3, 90 A.3d 1169, which also involved a long-term relationship that ended nearly two years after the birth of the child.

12

observed that termination of such relationships "can be deeply wounding" for the children involved. Significantly, the trial court did not find that beyond "hurt" feelings, the injury, loss, or hurt to the child in this case would be any different or greater than the hurt to children in thousands of similar cases.

[¶24] The court's explicit "sadly unexceptional" finding is a finding that Kelley failed to meet his burden to prove that the hurt, or "harm" to *this* child in *this* case is any different or greater than the hurt experienced by thousands of children experiencing similar circumstances. To emphasize its point that Kelley had failed to meet his burden of proof, the court also found that, regarding termination of the relationship between Kelley and *this* child the "circumstances cannot be deemed exceptional."[6] Beyond referencing the trial court's findings, it also must be emphasized that nothing in the record suggests that any hurt or harm to this child from termination of the relationship with Kelley was at all exceptional or indicated that the child's suffered unusual long term emotional harm by loss of the relationship with Kelley that today is long in the past. A remand now will only

---

[6] In its order, the District Court appears to have applied a preponderance of the evidence standard of proof to evaluate whether Randall Kelley had met his burden to prove de facto parent status. It then determined that Kelley had failed to meet even this lower burden of proof. Because an effort to establish de facto parent status seeks to have the State interfere in a parent's fundamental constitutional right to parent a child, the clear and convincing evidence standard of proof applies to such efforts. *See Guardianship of Gionest*, 2015 ME 154, ¶ 5, 128 A.3d 1062; *Pitts v. Moore*, 2014 ME 59, ¶ 27, 90 A.3d 1169.

add confusion and stress to the child's life in Kelley's effort to judicially reestablish a long-passed connection to the child.

[¶25]  Jenna Gordius, the child's mother, already has a court-ordered shared parental rights arrangement with her child's biological father.  That order appears to allow the child's father approximately two days a week with his child, and parts of up to four days a week in some weeks.  Awarding Kelley de facto parent status will inject a third party into the already divided visitation schedule; remove the child from home for more time each week; and increase confusion and instability in parenting and direction at a time when the child—any child—needs stability and consistent direction to support emotional development and well-being.

[¶26]  The Court's opinion is in reality remanding for a further explanation of the trial court's explicit findings that Kelley had failed to meet his burden to prove that the hurt to this child was unusual or exceptional compared to other children in similar circumstances.  Such a remand is unusual in appellate review practice in requiring a detailed explanation of a trial court finding that a party with the burden of proof has failed to meet that burden of proof.  *See Wandishin v. Wandishin*, 2009 ME 73, ¶ 19, 976 A.2d 949 (trial court, having found the facts, need not explain rationale used to support each finding).

[¶27]  A party, like Kelley, who has the burden of proof on an issue, can prevail on a challenge to a finding that his burden has not been met only if he can

demonstrate that a contrary finding is compelled by the evidence. *Guardianship of Gionest*, 2015 ME 154, ¶ 5, 128 A.3d 1062. The Court should not utilize a claimed need for a more detailed explanation of the rationale for the trial court's finding that Kelley failed to meet his burden of proof to turn an issue of fact into an issue of law to try to overturn a fact-finding the Court may not like.

[¶28] As the Court recognizes, Court's Opinion ¶ 10, the law is "firmly established that parents have a fundamental liberty interest to direct the care, custody, and control of their children." *Davis v. Anderson*, 2008 ME 125, ¶ 18, 953 A.2d 1166 (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Rideout v. Riendeau,* 2000 ME 198, ¶ 12, 761 A.2d 291 (plurality opinion)).

[¶29] The clear direction of the *Gionest, Davis, Troxel,* and *Rideout* precedents is that our law recognizes and respects the constitutionally protected liberty interest of a parent or parents to parent their child free from state interference. Nothing in the record before us indicates harm to "*this child*" that could meet the constitutional standard of a "dramatic, and even traumatic, effect upon the child's well-being." That is the degree of harm to a child that we have held is necessary to support a de facto parent award if, and only if, that harm is proven by clear and convincing evidence. *Rideout*, 2000 ME 198, ¶ 26, 761 A.2d 291.

[¶30]    The Court's focus on whether a child's interests would be "substantially and negatively affected" by the denial of Kelley's claim to de facto parent status is simply a different way of asking whether an award of de facto parent status to a nonparent would be in the best interest of the child.    That "negative affect" standard, adopted in *Pitts*, and continued by the Court's opinion here, is vague and likely unconstitutional given the United States Supreme Court's conclusion in *Troxel* that the best interest of the child standard is constitutionally insufficient to support judicial interference with a parent's rights.  *See Troxel*, 530 U.S. at 67-73.  *See also* Samuel Johnson, *Are You My Mother? A Critique of the Requirements for de Facto Parenthood in Maine Following the Law Court's Decision in Pitts v. Moore*, 67 Me. L. Rev. 354, 370-376 (2015).

[¶31]  The District Court's finding that Kelley failed to meet his burden to prove something less than the constitutional standard of "dramatic, even traumatic effect upon the child's well-being" sufficient to support government interference with the parents' rights to parent their child should be affirmed.  This record does not compel findings, to the clear and convincing evidence standard, of harm that will have a "dramatic, and even traumatic effect upon [this] child's well-being," *Rideout*, 2000 ME 198, ¶ 26, 761 A.2d 291.  Mandating further litigation now, and the potential injection into the child's life of a contentious third party sharing parenting time and decision-making, will harm the child's need for stability and

consistent parental direction and support.  Kelley and the child have now been separated for more than half of the child's life.  This litigation should end now.  I would affirm the trial court's judgment.

---

**On the briefs:**

Christopher J. Whalley, Esq., Ellsworth, for appellant Randall G. Kelley

Jeffrey C. Toothaker, Esq., Ellsworth, for appellee Jenna Gordius

Ellsworth District Court docket numbers FM-2012-126 and FM-2013-281
FOR CLERK REFERENCE ONLY